UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:02-CV-00324-R

LORI ANDERSON, et al.                                              PLAINTIFFS

v.

OLD NATIONAL BANCORP and
OLD NATIONAL TRUST COMPANY                                          DEFENDANTS

### MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Plaintiffs' Motion For Leave To File Second

Amended Complaint (DN 170).  Defendants have responded (DN 176), and Plaintiffs have

replied (DN 178).  This matter is now ripe for adjudication.  For the reasons that follow,

Plaintiffs' Motion is GRANTED.

Also before the Court is Defendants' Second Joint Motion for Summary Judgment (DN

171).  Plaintiffs have responded (DN 180), and Defendants have replied (DN 186).  This matter

is now ripe for adjudication.  For the reasons that follow, Defendants' Motion is GRANTED IN

PART and DENIED IN PART.

Plaintiffs have also moved for partial summary judgment on Counts One, Two, Three,

Four, Seven, Eight, Nine, and Ten of their Amended Complaint (DN 173).  Defendants have

responded (DN 177), and Plaintiffs have replied (DN 185).  This matter is now ripe for

adjudication.  For the reasons that follow, Plaintiffs' Motion is DENIED.

### BACKGROUND

This matter originally arose out of a dispute concerning the breach of a lease ("Lease").

Plaintiffs in this case are beneficiaries of the Charles R. Jones, Sr. Trust ("C.R. Trust" and "C.R.

Plaintiffs") and the Eula Kathleen Jones Trust ("Eula Trust" and "Eula Plaintiffs") (collectively

"Jones Family Trusts" and "Plaintiffs").  The subject of the Lease is the Jones Family Trusts' primary asset, one of the largest limestone quarries in the United States.  The original dispute involved the lessee quarry operator, Martin Marietta Materials, Inc. ("Martin Marietta"), and the Jones Family Trusts.

In November 1997, Martin Marietta removed and marketed approximately 2,000 cubic yards of soil from the property.  This action became the basis of a lawsuit brought by the trustees of the Jones Family Trusts.  The trustees argued that the removal and marketing of the soil constituted a breach of the Lease.  The beneficiaries hoped that if the Lease terminated, they would be able to negotiate a new lease with more favorable terms.

In this prior lawsuit ("Prior Lawsuit"), this Court found that Martin Marietta breached the Lease by marketing the surface soil.  *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, No. 5:95-cv-289 (W.D. Ky. Feb. 8, 2000).  However, the Court held that the trustees had waived their right to terminate the Lease because they accepted Lease payments after and with knowledge of Martin Marietta's breach.  *Id.*  The Sixth Circuit affirmed the Court's decision. *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, 22 F. App'x 546 (6th Cir. 2001).

Defendants Old National Bankcorp and Old National Trust Company (collectively "ONB" or "Old National") are the former trustee of the C.R. Trust.  At times relevant to the present dispute, ONB was the trustee of the C.R. Trust and managed the Eula Trust.  ONB became aware of the soil removal sometime around November 1997, but continued to accept Lease payments from Martin Marietta until July 1998.  In the current lawsuit, Plaintiffs allege that ONB breached its fiduciary duties to Plaintiffs by accepting these payments.

2

## I.    SECOND AMENDED COMPLAINT

### A.    Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  The rule directs that the "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule gives effect to the principle that, as far as possible, cases should be determined on their merits and not on technicalities.  *Cooper v. Am. Employers' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961).  Denial of leave to amend may be appropriate "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."  *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 690 (6th Cir. 2003) (citations and quotation omitted).

### B.    Plaintiffs May Amend Their Complaint

Plaintiffs moved to amend their complaint on August 26, 2009, two days before the Court's deadline for dispositive motions to be filed.  On August 28, both parties moved for summary judgment.  Most of the proposed changes to the First Amended Complaint are insignificant, to which ONB objects on the grounds that they are unnecessary.  Plaintiffs do, however, propose one significant change to the language of Count Two.[1]

Count Two of Plaintiffs' First Amended Complaint states as follows:

50.    Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by

---

[1] For reasons discussed *infra*, Part II(B)(1)(b), Count I shall be dismissed regardless of the change in the proposed amended language.

3

accepting and cashing the Lease royalty payments <u>after notice of the Lease's termination had been given to Martin Marietta</u>.

51.   Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by failing to seek out legal advice before accepting and cashing the Lease royalty payments <u>after notice of the Lease's termination had been given to Martin Marietta</u>.

52.   If Old National had not accepted and cashed the royalty payments, the Lease would have terminated, allowing the Jones Family Trusts to obtain higher royalty payments under a new lease.

53.   Consequently, Plaintiffs were damaged by Old National's actions.

(emphasis added).   Count Two of Plaintiffs' Second Amended Complaint states as follows:

50.   Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by accepting and cashing the Lease royalty payments <u>that caused a waiver of Martin Marietta's breach of the Lease</u>.

51.   Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by failing to seek out legal advice before accepting and cashing the Lease royalty payments <u>that caused a waiver of Martin Marietta's breach of the Lease</u>.

52.   If Old National had not accepted and cashed the royalty payments, the Lease would have terminated, allowing the Jones Family Trusts to obtain higher royalty payments under a new lease.

53.   Consequently, Plaintiffs were damaged by Old National's actions.

(emphasis added).   The language "after notice of the Lease's termination had been given to Martin Marietta" is changed in the Second Amended Complaint to "that caused a waiver of Martin Marietta's breach of the Lease."

Notice of the Lease's termination was given to Martin Marietta on March 4, 1998.   The proposed change to the Complaint effectively moves back this key date several months to November or December 1997.   In the prior litigation, this Court explicitly held that ONB's "acceptance of lease payments after and with knowledge of [Martin Marietta's] breach waived [the trusts'] right to terminate the lease for that breach."   *First Nat'l Bank & Trust Co.*, No. 5:98-

4

cv-289.  The Sixth Circuit affirmed that decision, emphasizing the general rule "that when rent is accepted by a lessor with knowledge of particular conduct which is claimed to be a default on the part of the lessee, acceptance of the rent constitutes a waiver by the lessor of the lessee's default."  *First Nat'l Bank & Trust Co.*, 22 F. App'x at 549.  Plaintiffs should have understood that waiver occurred months before notice of the Lease's termination was given to Martin Marietta, and should not have used that language in their original Complaint if what they meant to say was ONB recklessly breached its duties to Plaintiffs by waiving Martin Marietta's breach.

ONB has not had an opportunity to address the amended language, so the Court will not examine precisely when waiver occurred.  Arguably, from the evidence submitted, however, it is apparent that the waiver occurred before March 4, 1998, and therefore allowing Plaintiffs to amend the language will prejudice ONB to a degree because Count Two would otherwise be dismissed.[2]  ONB will likely incur some additional expenses in developing new arguments to rebut the altered allegation.  The alteration of the language does not merely "simplify issues" as Plaintiffs argue, it is a substantive change to the Count.  Moreover, the motion was filed almost seven years after the original complaint was filed, and Plaintiffs do not offer a justification for this delay.

Ultimately, however, the Court finds that justice requires allowing Plaintiffs to amend their Complaint.  The Court does not believe the prejudice to ONB outweighs the principle that cases should be determined on their merits.  "The case law in this Circuit manifests 'liberality in

---

[2] Based on the evidence before the Court, ONB sought out legal advice after March 4, 1998, the date when notice of the Lease's termination was given to Martin Marietta, and before accepting and cashing additional Lease royalty payments.  Furthermore, if waiver occurred months before March 4, then ONB could not have breached a duty to Plaintiffs by accepting Lease payments from March through July.

allowing amendments to a complaint.'" *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).  Even though Plaintiffs worded Count Two poorly, ONB knew that Plaintiffs' major theory in this case was that ONB's acceptance of royalty payments waived Martin Marietta's breach of the Lease.  ONB should not be surprised by the change in language because it reflects, better than the original language, Plaintiffs' obvious argument that ONB should be held liable for cashing the royalty checks that caused the waiver.  It is not in the interest of justice to allow this claim to be dismissed due to unfortunate language rather than to consider the actual merits of Plaintiffs' allegation.  The Court doubts that additional discovery is necessary, or that allowing the amendment will significantly delay this matter further.  The Court also does not believe granting Plaintiffs' Motion to Amend moots the pending summary judgment motions, as ONB contends, because the motions concern many issues unrelated to the changed language.

Fairness does dictate, however, that ONB be given an opportunity to address the amended Count Two.  Therefore, ONB may file an additional motion for summary judgment within 45 days from the entry of this opinion.  Plaintiffs may have 15 days to respond, and ONB may have 10 days to reply.  Without exception, both parties shall comply with the page limits set forth in LR 7.1.  Additionally, Plaintiffs will bear ONB's reasonable costs related to the motion and ONB's amended Answer, not to exceed $10,000.  *See Janikowski*, 823 F.2d 945, 952 (6th Cir. 1987) (explaining that the proper remedy for subjecting the defendant to duplicative discovery as a result of amendment is to require the amending party to bear a portion of the additional expense).

6

II.     **SUMMARY JUDGMENT**

    A.     **Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v.*

7

*Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

    **B.**    **Analysis**

        **1.**    **Claims Asserted By The C.R. Plaintiffs**

            **a.**    **The C.R. Plaintiffs' Claims Are Not Barred By The C.R. Trust**

ONB originally raised the question of whether Plaintiffs had the power to assert claims against it in its motion for summary judgment filed April 23, 2008.  ONB argued that Plaintiffs lacked standing to assert claims against it because a trust beneficiary lacks standing to maintain a suit against a third person for injury to the trust.  Plaintiffs' response concentrated on why a beneficiary does have standing to maintain a suit against a current trustee, and did not substantively address ONB's argument that Plaintiffs no longer had standing because ONB is a former trustee.  The Court granted ONB's motion, concluding that Plaintiffs did not have standing to sue ONB in this matter because ONB is their former trustee.

Plaintiffs moved to alter or amend the judgment on April 4, 2009.  They argued that the question of standing raised by ONB was actually a question of whether Plaintiffs are the real parties in interest under Federal Rule of Civil Procedure 17.  Upon reexamination, the Court found that Plaintiffs did meet the minimum constitutional standing requirement.  Furthermore, the Court found that ONB's original standing argument in support of its motion for summary judgment was, in essence, a real party in interest argument.  The Court, however, concluded that ONB waived any real party in interest objections, and vacated the prior order granting summary judgment for ONB.

In its current Motion, ONB again contends that the C.R. Plaintiffs have no independent

right to assert claims related to the exercise or non-exercise of trustee powers.  It argues that the Court's prior rulings did not determine whether the C.R. Plaintiffs' claims for relief are precluded by the terms of the C.R. Trust.  Section 9 of the C.R. Trust provides that the trustee shall have certain "powers with respect to the Trust and property therein," including the power "to prosecute and defend, and in the interest of its sole discretion which shall be binding on all interested parties, to compromise, settle or abandon claims by or against the Trust."  This power may "be exercised from time to time at the discretion of the trustee."  The C.R. Trust further provides, in Section 14, that "[t]he decision of the trustee with respect to the exercise of any discretionary powers hereunder, or the time or manner of the exercise thereof, made in good faith, shall fully protect the trustee and shall be conclusive and binding upon all persons interested in the Trust hereunder."  In combination, the significance of these provisions is that the good faith discretionary decision of the trustee not to pursue a claim with respect to the C.R. Trust is binding upon all beneficiaries of the C.R. Trust.

The C.R. Plaintiffs' current trustee, Bank of Oklahoma, has not pursued a claim against ONB.  Bank of Oklahoma has no duty to do so, according to the September 7, 2005, order entered in McCracken District Court, Probate Division.  The court ordered that "Bank of Oklahoma, N.A. as Successor Trustee shall be under no duty to inquire into the acts of any prior trustee or bring suit with respect to any such acts."  The order does not bar Bank of Oklahoma from pursuing a claim on behalf of the C.R. Trust against ONB, it only relieves Bank of Oklahoma from liability for not doing so.

The terms of the C.R. Trust bar beneficiaries from asserting claims on behalf of the trust.  Only the trustee, now Bank of Oklahoma, may pursue a claim by the C.R. Trust.  The Bank of

Oklahoma has not pursued a claim against ONB, and has no duty to do so.  This decision is binding upon the C.R. Plaintiffs.

The C.R. Plaintiffs, however, are making claims on their own behalf, not on behalf of the C.R. Trust.  They seek damages for reduced income payments under the C.R. Trust.  The terms of the C.R. Trust do not preclude these claims.  Ordinarily these claims would be subject to real party in interest objections because the alleged damages were sustained directly by the C.R. Trust and only indirectly to the C.R. Plaintiffs.  Here, ONB waived any real party in interest objections.  Mem. Op. & Order, July 29, 2009.

As the Court noted in its prior opinion, ONB first challenged Plaintiffs' power to bring this action over two and a half years after the time ONB was no longer trustee of the C.R. Trust.  ONB filed its amended answer, responded to the joinder of additional beneficiaries, and moved for bifurcation without ever arguing that Plaintiffs were no longer the real party in interest.  When ONB raised this issue it was framed as a standing argument in the final few pages of a fifty-six page motion for summary judgment.  Both parties have expended significant resources in the course of this lawsuit, which was filed in 2002, including many resources since 2005, when Plaintiffs arguably lost their status as real parties in interest.  The purpose of the real party in interest rule is "to protect the defendant against a subsequent action by the party actually entitled to recover," Rule 17 advisory committee notes (1966), and therefore may be waived. *See, e.g.*, *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1080 (11th Cir. 2003); *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982); *Audio-Visual Mktg. Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir. 1976); *Fox v. McGrath*, 152 F.2d 616, 618 (2d Cir. 1946).  In light of the circumstances of this

10

particular case and to prevent manifest injustice, the Court's prior ruling concluded ONB waived any real party in interest objections.  Mem. Op. & Order, July 29, 2009.

Consequently, the C.R. Plaintiffs' claims are not barred.

### b.     Bad Faith Is The Standard For Trustee Liability

Section 11 of the C.R. Trust provides that "[a] trustee shall be responsible only for such trustee's own acts and omissions in bad faith."  ONB contends that consequently, bad faith is the applicable standard for any ONB liability under the C.R. Trust.  Plaintiffs argue that bad faith is not the proper standard because the provision is unenforceable.

An exculpatory clause is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act."  *Black's Law Dictionary* (8th ed. 2004).  The parties agree that Section 11's provision is an exculpatory clause.  In Kentucky, exculpatory clauses "are disfavored and strictly construed against the parties relying on them."  *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005).  To be enforceable, a release from liability "must be so 'clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable.'"  *Id.* (citation omitted).

Section 11 of the C.R. Trust addresses the removal and resignation of a trustee, the selection of a successor trustee, and the responsibilities of a new trustee.  The import of the first sentence of the final paragraph in the section is plain and unmistakable: "A trustee shall be responsible only for such trustee's own acts and omissions in bad faith."  A trustee can only be found liable if it acted in bad faith.  In context, the sentence also emphasizes that a successor trustee is not responsible for a prior trustee's acts or omissions:

> A successor trustee shall be under no duty to inquire into the acts of
> the prior trustee(s) and may rely upon the records and/or accountings of the

11

> prior trustee(s) as full, complete and accurate.
>
> A trustee shall be responsible only for such trustee's own acts and omissions in bad faith.  Furthermore, a successor trustee shall not be liable for any action taken by a trustee prior to the time such successor trustee becomes a trustee.

If all the sentence in question meant was that a successor trustee is not responsible for a prior trustee's actions, then the sentence following it would be superfluous.  Moreover, interpreting the sentence to only mean that a successor trustee is not responsible for a prior trustee's actions would ignore its key "bad faith" language.  An ordinarily prudent and knowledgeable party would understand that a trustee could only be held responsible for its actions or omissions made in bad faith.  This is the only reasonable construction of the provision's language.

Kentucky courts "have traditionally enforced exculpatory provisions unless such enforcement violates public policy."  *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007).  Central to this determination is whether the exculpatory clause is part of an arm's-length transaction, between parties upon equal footing, entered into voluntarily.  *Id.* (citing *Greenwich Ins. Co. v. Louisville & Nashville R.R. Co.*, 66 S.W. 411 (1902)).  Whether the plaintiff suffered personal injury, as opposed to only a property loss, may also be a factor in determining whether an exculpatory clause is invalid under Kentucky law.  *Id.* at 653 (noting that there is no published Kentucky state case in which an exculpatory clause was invalidated when only property loss occurred).  Finally, the Supreme Court of Kentucky recently stressed the importance of freedom to contract:

> [C]ontracts voluntarily made between competent persons are not to be set aside lightly.  As the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality.  If the legality of the contract can be sustained in whole or in part under any reasonable

> interpretation of its provisions, courts should not hesitate to decree enforcement.

*Id.* at 654 (citation omitted).

There is no evidence that C.R. Jones was compelled to execute the trust. There is no evidence that its execution was involuntary in any way. Plaintiffs assert that the exculpatory language was drafted by the bank that served as the first trustee, but the evidence cited does not support this assertion. There is no evidence that C.R. Jones and the original trustee were engaging in anything less than an arm's length dealing made upon equal footing. C.R. Jones created the trust, the bank agreed to be the trustee. C.R. Jones could have chosen another party to be the trustee. He did not have to create a trust at all. He was not seeking to obtain a necessity, such as medical care or personal employment. *See id.* at 653. Plaintiffs imply that his age and Parkinson's disease somehow effected his capacity to execute the agreement, but there is no evidence this was the case.

Plaintiffs also argue that the provision is unenforceable because it is contrary to Kentucky statutory law. Kentucky Revised Statute § 286.3-277 outlines the standards for a bank acting as a fiduciary, and provides that such a bank "shall act as a prudent investor would" and exercise "reasonable care, skill and caution." A "prudent man" is further defined as a "trustee whose exercise of trust powers is reasonable and equitable in view of the interests of income or principal beneficiaries or both, and in view of the manner in which men of ordinary prudence, diligence, discretion, and judgment would act in the management of their own affairs." KRS § 386.800(3).

Plaintiffs contend that these statutory provisions prohibit any diminution of a trustee's duty, regardless of the language in the trust. The Court does not need to determine whether a

trust document could diminish a trustee's duties because the C.R. Trust does not alter the duty of a trustee to act as a prudent investor.  Rather, Section 11 sets the standard under which liability may be assessed against the trustee.  The trust language does not contradict KRS § 286.3-277. Inversely, Kentucky statutory law does not invalidate the trust language.  The trustee still has a duty to act as a prudent investor, but according to the C.R. Trust may only be held liable for a bad faith breach of that duty.

Lastly, Plaintiffs argue that based on the principle of promissory estoppel ONB's representations preclude the enforcement of the bad faith clause.  Plaintiffs, however, cite no authority to support their contention that ONB's "promises, broader than the exculpatory clause, must be enforced and trump any exculpatory clause contained in the C.R. Jones Trust."  The Court also did not discover any support for Plaintiffs' argument.

In short, the Court finds no reason to invalidate the exculpatory clause at issue.  ONB may only be held liable for its acts and omissions in bad faith.  For each count of the Second Amended Complaint, other than Counts 11, 12, and 13, Plaintiffs plead in the alternative due to the C.R. Trust's bad faith standard.  For example, Count 3 alleges that ONB breached its fiduciary duty to the Plaintiffs by not providing certain information, while Count 4 alleges ONB breached its fiduciary duty and acted in bad faith.  Because the Court has determined that ONB may only be held liable for its acts and omissions in bad faith, Counts 1, 3, 5, 7, 9 and 14 have failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and therefore will be dismissed with respect to the C.R. Plaintiffs.

### c.   Bad Faith Encompasses Reckless Disregard For The Rights Of The Beneficiaries

The parties also disagree regarding what is meant by the term "bad faith."  ONB argues

14

that bad faith is "stronger than the idea of negligence" and "contemplates a state of mind affirmatively operating with a furtive design or with some motive of self-interest or ill will, or for an ulterior purpose." *Warfield Natural Gas Co. v. Allen*, 59 S.W.2d 534, 538 (Ky. 1933). Plaintiffs argue that bad faith includes the reckless disregard for the rights of others, and breach of fiduciary duty is de facto bad faith.

*Warfield*, the case on which ONB relies most heavily for its articulation of bad faith, examined a "tort based upon a breach of duty imposed by contract." *Id.* Appellees, owners of land with oil and gas reserves, accused the appellant, the lessee, of drilling a well in such a way that wasted large quantities of oil and damaged appellees' royalty payments. *Id.* at 535. The court explained that when a question of fact exists regarding whether oil had been found in paying quantities, the "discretion and judgment of the lessee will be accepted as conclusive unless fraud or bad faith is shown." *Id.* at 537. The court discussed the meaning of good faith, bad faith and fraud, providing ONB's above definition for bad faith. *Id.* at 538. Bad faith is the antithesis of good faith, which the court defined as "[a]n honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of law, together with an absence of all information or benefit of facts which would render the transaction unconscientious." *Id.* In conclusion, the court found that appellees did not show that the appellant "in making a choice and determining its course acted so unreasonably or arbitrarily that it could be said it failed to exercise an honest judgment or was unfaithful in the discharge of the implied duties devolving upon it by virtue of the lease." *Id.* at 540.

Plaintiffs contend that more recent authority holds that bad faith is automatically demonstrated by a breach of fiduciary duty, citing *Steelvest, Inc. v. Scansteel Service Center,*

15

*Inc.*, 807 S.W.2d 476, 487 (Ky. 1991).  In *Steelvest*, the appellee was accused of breaching his fiduciary duty to appellant by preparing to incorporate his own business while still employed as a director and officer with appellant company.  *Id.* at 483.  Evidence demonstrated that appellee's attorney advised him in his efforts to form the new business while appellee was still employed by appellant.  *Id.* at 487-88.  Appellants argued that the trial court erred in overruling their motion to compel discovery from appellee's attorney on the basis of attorney-client privilege.  *Id.* at 487.  Because appellee's attorney would have known that his plans to form a competing business while still employed by appellant possibly constituted a breach of appellee's fiduciary duty to appellant, the court held that the attorney-client privilege could not prevent discovery of the information.  *Id.* at 488.  The court reasoned that the privilege did not apply when the person seeking advice is contemplating the perpetration of a fraud, and that "a breach of fiduciary duty is equivalent to fraud."  *Id.* at 487.

ONB replies that Plaintiffs' reliance on *Steelvest* is misplaced because the court was equating breach of fiduciary duty to an intentional or malicious act of deceit, not simple negligence.  Despite his duties of loyalty and faithfulness to appellant, and his duty not to act against its interest, the facts showed that the appellee, while still employed with appellant, "made certain plans, arrangements, and preparations for setting up his own business to compete . . . . He sought legal and accounting advice, made active efforts to acquire bank financing, and recruited investors."  *Id.* at 484.  He also "failed to disclose such activities," and "indicated to prospective investors and to bank personnel that he would bring with him some of [appellant's] present employees."  *Id.*

More importantly, the court was equating breach of fiduciary duty to fraud in the context

16

of when the attorney-client privilege does not protect communications because the attorney is advising his client on actions constituting a breach of the client's fiduciary duty.  The Court finds that the *Steelvest* court's determination that a breach of fiduciary duty is equivalent to fraud is limited by the facts of that case.  Plaintiffs cannot rely on *Steelvest* to assert that any breach of fiduciary duty is de facto bad faith.

Plaintiffs also argue that more recent authority includes reckless disregard for the rights or interests of others within the scope of bad faith.  *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993); *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 343 (Ky. 1986); *Morton v. Bank of the Bluegrass & Trust Co.*, 18 S.W.3d 353, 359 (Ky. Ct. App. 1999).  ONB replies that these cases are inapplicable because they deal with an insurance company's bad faith denial to pay an insurance claim.

In Kentucky, in order to establish a claim for bad faith against an insurance company for refusal to pay the insured's claim, the insured must prove three elements:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim *or acted with reckless disregard for whether such a basis existed.*

*Wittmer*, 864 S.W.2d at 890 (emphasis added).  In one bad faith insurance case, the court specifically stated that "an action for bad faith . . . requires something more than mere negligence," "[m]ere errors in judgment should not be sufficient to establish bad faith," and that "[t]he term itself implies some intentional wrongful conduct."  *Blue Cross Blue Shield of Ky., Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985).  The court's later statement, however, indicates that the bad faith standard would be satisfied if the insurer "acted

17

intentionally, willfully or in *reckless disregard* of the insured's rights." *Id.* (emphasis added).

Kentucky's "bad faith action is based upon the fiduciary duty owed by an insurance company to its insured based upon the insurance contract." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 380 (Ky. 2000). In contrast, the duty owed by the lessee in *Warfield* was not a fiduciary one, rather the law imposed an implied obligation to perform the contract in good faith, including exercising the sound discretion of a prudent operator to drill to a depth that was reasonably necessary to test the land. 59 S.W.2d at 536. Though not factually similar, in this way Kentucky's bad faith insurance cases are more analogous to the present matter than *Warfield*.

Having examined the arguments of each party, the Court concludes that in this case bad faith encompasses a claim that a trustee acted in reckless disregard of beneficiaries' rights. *See Wittmer*, 864 S.W.2d at 890. The Court considers a trustee acting in reckless disregard to the rights of beneficiaries the antithesis to the conscientious execution of its fiduciary duties. *See Warfield*, 59 S.W.2d at 538. Bad faith on the part of a trustee may also "contemplate[] a state of mind affirmatively operating with a furtive design or with some motive of self-interest or ill will, or for an ulterior purpose." *Warfield*, 59 S.W.2d at 538. Negligence or a simple error in judgment, however, does not establish bad faith. *See Blue Cross*, 687 S.W.2d at 559. In other words, ONB may be held liable if Plaintiffs can prove that ONB breached a fiduciary duty in bad faith that ONB owed to Plaintiffs, and Plaintiffs were injured as a consequence. *See Ill. Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967).

Kentucky Revised Statutes § 286.3-277 outlines the standards for a bank acting as a fiduciary. The statute provides that "a bank empowered to act as a fiduciary or trust company,

18

when . . . managing property held in a fiduciary capacity, shall act as a prudent investor would"

and exercise "reasonable care, skill and caution."  KRS § 286.3-277.  A "prudent man" is further

defined as a "trustee whose exercise of trust powers is reasonable and equitable in view of the

interests of income or principal beneficiaries or both, and in view of the manner in which men of

ordinary prudence, diligence, discretion, and judgment would act in the management of their

own affairs."  KRS § 386.800(3).  Additionally, if a trustee "has greater skill than that of a man

of ordinary prudence, he is under a duty to exercise such skill as he has."  Restatement (Second)

Trusts § 174; *Bryan v. Sec. Trust Co.*, 176 S.W.2d 104, 110 (Ky. 1943).  As a trustee, a bank also

must "[c]onform to fundamental fiduciary duties of loyalty and impartiality," "[a]ct with

prudence in deciding whether and how to delegate authority and in the selection and supervision

of agents," "[i]ncur only costs that are reasonable in amount and appropriate to the investment

responsibilities of the account," KRS § 286.3-277, "administer a trust expeditiously for the

benefit of the beneficiaries," KRS § 386.705, and "keep the beneficiaries of the trust reasonably

informed of the trust and its administration," KRS § 386.715.

### d.   Summary Judgment Is Not Appropriate With Respect To Count Two At This Time

Count Two of Plaintiffs' Second Amended Complaint states as follows:

50.   Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by accepting and cashing the Lease royalty payments that caused a waiver of Martin Marietta's breach of the Lease.

51.   Old National breached its fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by failing to seek out legal advice before accepting and cashing the Lease royalty payments that caused a waiver of Martin Marietta's breach of the Lease.

52.   If Old National had not accepted and cashed the royalty payments, the Lease would have terminated, allowing the Jones Family Trusts

19

to obtain higher royalty payments under a new lease.

53.     Consequently, Plaintiffs were damaged by Old National's actions.

Two of ONB's arguments with respect to the language of this Count in the First Amended

Complaint still apply to the Second Amended Complaint.  ONB contends that it did not have a

duty to seek out legal advice.  ONB also argues that Count Two fails as a matter of law because

the C.R. Plaintiffs have no evidence to prove that Lease termination would have occurred but for

the waiver.

In response to ONB's argument that it did not owe a fiduciary duty to the C.R. Plaintiffs

to seek legal advice, Plaintiffs state that a jury could consider the alleged actions of ONB, or lack

of action, reckless disregard for the C.R. Plaintiffs interests.  The Court agrees, and finds that it

is possible that a jury could determine ONB recklessly breached its duty to act with reasonable

care, skill and caution if it did not seek out such legal advice before accepting Lease royalty

payments after giving notice of termination to Martin Marietta.  *See* KRS § 286.3-277;

Restatement (Third) Trusts § 77, comment b(2) ("Taking the advice of legal counsel . . .

evidences prudence on the part of the trustee."); 12 C.F.R. § 9.5(d).

Based on the evidence submitted by ONB, the facts regarding whether and when ONB

sought out legal advice appear to be as follows.  In November 1997, Martin Marietta permitted a

third party to remove approximately 2,000 cubic yards of earth from the leased land.  In

December 1997, Jimmy Jones, one of the beneficiaries of the C.R. Trust, mailed a copy of the

Lease to Greg English, a North Carolina attorney and relative, and asked him whether Martin

Marietta's dirt removal constituted a default of the Lease.  Shortly thereafter, English contacted

Neill for the sole purpose of obtaining an address to which to send his bill.  At Jimmy Jones'

request, English later faxed Neill the draft notice of default letter he had composed.  On January

20

16, 1998, Neill sent a letter to Martin Marietta's predecessor putting it on notice of default for its unauthorized removal of fill material.

On March 3, 1998, Thomas Osborne, a Kentucky attorney, contacted Neill to tell him that he approved of the language of a lease termination notice.  It is not clear what contact Neill and Osborne had prior to this point.  The next day, March 4, Neill sent a letter terminating the Lease.

On March 15, 1998, Osborne sent a letter to Neill confirming that the trusts authorized Osborne's firm to file an action against Martin Marietta "to void the lease agreement based upon existing default letters served" and stating that his firm would do so within ten days.  About three months later, on June 23, 1998, Osborne sent a letter to English requesting English's thoughts on "whether a suit to terminate the lease requires that we begin refusing monthly lease payments" and suggesting an alternative strategy so that the trusts could continue receiving payments.

On July 1, 1998, Osborne faxed Neill a legal memorandum suggesting that a lessor's acceptance of payment on a lease subsequent to a breach precludes any action on that breach. The next day Neill responded, asking if it would be permissible to return the checks signed for by the mail room and to request that no further payments be made until the matter is settled. Osborne approved of this method of returning the monthly royalty checks.  On July 14, Neill sent a letter to the beneficiaries explaining that "the trust will not be able to accept the checks and successfully proceed with its action to break the lease with Martin Marietta" and stating that the prior month's checks would be returned.

Based on this evidence, it arguably appears ONB did not seek out legal advice until sometime around early March 1998.  The Court will not make a finding, however, because ONB

has not yet had an opportunity to address the changed language in the Second Amended Complaint.

Finally, while ONB is correct in stating that there is no way to know with absolute certainty what would have occurred had waiver of the breach never occurred, the Court does not find the claim in Paragraph 52 too hypothetical or speculative to bar recovery.  Plaintiffs bear the burden of convincing a jury that had ONB not accepted the royalty payments, the Lease would have terminated, and they would have obtained higher royalty payments under a new lease. ONB can rebut this argument with any evidence or argument it may have, including an argument that Martin Marietta might have cured the breach.

> **e.      There Is No Genuine Issue As To Any Material Fact Regarding Count Four And ONB Is Entitled To Judgment As A Matter Of Law**

Count Four of the Second Amended Complaint provides as follows:

62.    Defendants had a duty to provide information concerning the Prior Lawsuit to the Plaintiffs.

63.    When requested to provide such information in or about October, 2002, Neill claimed that such information was protected by the attorney/client privilege that existed between the Defendants and Frost Brown Todd.

64.    However, Neill produced no documents, including no public records, such as pleadings and depositions, in response to the requests by Plaintiffs.

65.    Any attorney-client privilege belonged to both the Defendants and to the Plaintiffs, as beneficiaries.

66.    In addition to the privilege belonging to the beneficiaries, Defendants waived any privilege by having beneficiaries participate in conferences with attorneys and by forwarding attorney-client communications to the beneficiaries.

67.    Defendants breached their fiduciary duties to the Plaintiffs and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by not supplying the information, causing damage to the Plaintiffs.

There does not seem to be any dispute regarding the facts surrounding this claim.  On October 8,

22

2002, nearly a year after the Sixth Circuit affirmed this Court's summary judgment order, the C.R. Plaintiffs' counsel sent a letter to Neill requesting the complete Frost Brown Todd[3] file in order to look into whether the firm committed legal malpractice, and whether "any other person or entity committed malpractice or breached a fiduciary duty with regard to the trust's acceptance of lease payments after notice of the breach."  On October 17, counsel for ONB advised Plaintiffs' counsel that the determination of whether legal malpractice had been committed "is a matter for the sole discretion of the Trustee" and refused to turn over the file, claiming attorney-client privilege.  Plaintiffs now state that "[t]hey sought the lawsuit file so that they could understand why Old National decided not to pursue the [malpractice case against Frost Brown Todd] and to review ways to persuade Old National to reconsider its decision."

KRS § 386.715 directs the trustee to "keep the beneficiaries of the trust reasonably informed of the trust and its administration."  The statute "establishes a right of beneficiaries to information concerning their interest or expectancy in the trust."  *JP Morgan Chase Bank, N.A. v. Longmeyer*, 275 S.W.3d 697, 702 (Ky. 2009).  The statute does not explicitly establish a right of beneficiaries to an entire file related to litigation the trustee undertook on behalf of the trust. Kentucky case law also does not address any such a right.  Comment f to The Restatement (Third) Trusts § 82 touches on this issue, and suggests that "legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering a trust . . . are subject to the general principle entitling a beneficiary to information that is reasonably necessary to the prevention or redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust."  This comment also

---

[3] Frost, Brown, Todd LLC is the firm that represented the trustees in the Prior Lawsuit.

does not articulate a right of beneficiaries to review legal documents in order to second-guess a trustee's decision not to pursue a legal malpractice action. Rather, it states that beneficiaries are entitled to information related to prospective legal action.

The Court finds that ONB's fiduciary duty to "keep the beneficiaries of the trust reasonably informed of the trust and its administration" does not encompass providing beneficiaries with the litigation file related to the Prior Lawsuit. If no duty existed, ONB could not have recklessly breached it. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (explaining that if the defendant owed no duty to plaintiff, plaintiff is entitled to judgment as a matter of law). Therefore, Count Four of the Second Amended Complaint shall be dismissed as a matter of law.

The allegations of Count Four by themselves are not sufficient to establish bad faith. However, taken combined with other alleged conduct they could provide a backdrop for such a claim. It certainly is part of the res gestae of the trust administration. While Count Four as a stand alone claim is dismissed, this is not a determination that this evidence is not relevant to the whole of Plaintiffs' claims.

> **f.      There Is A Genuine Issue Of Material Fact As To Whether ONB Recklessly Breached Its Duty To Incur Only Reasonable Costs**

Count Six of the Second Amended Complaint provides as follows:

76.   The Prior Lawsuit was litigated pursuant to Kentucky law.
77.   Under Kentucky law, acceptance of lease payments after giving notice of a breach waives the breach.
78.   In ruling on the Prior Lawsuit, the District Court for the Western District of Kentucky found no Kentucky law supporting Old National's non-waiver argument.
79.   Despite clear case law to the contrary, Defendants engaged Frost Brown Todd in a lawsuit that had no chance for success due to

24

Neill's waiver of the breach.

80.     Defendants exercised no effective supervision or auditing of Frost Brown Todd's litigation efforts or bills, thereby damaging Defendants.[4]

81.     Defendant[s] breached their fiduciary duties and acted in bad faith, in reckless disregard of the Plaintiffs' rights, by pursuing the Prior Lawsuit when there was no opportunity for success, thereby damaging Plaintiffs through the payment of attorneys' fees to Frost Brown Todd.

ONB states that it "satisfied its fiduciary duty by consulting legal counsel, consulting and informing the C.R. Trust beneficiaries relative to the Martin Marietta issues, providing said beneficiaries with access to legal counsel to answer their questions and in following the advice of legal counsel."  ONB also cites KRS § 386.810(3)(x), which provides that "[a] trustee has the power . . . [t]o employ persons, including attorneys . . . to advise or assist the trustee in the performance of his administrative duties" and "to act without independent investigation upon their recommendations."

Plaintiffs' response is largely consumed with how "actions by [Frost Brown Todd] damaged the beneficiaries."  For Count Six to survive summary judgment, however, Plaintiffs must point to some duty owed to them by ONB that was breached in bad faith by proceeding with the prior lawsuit.  ONB did not have an independent duty to conduct legal research and ascertain the possible success of bringing the Prior Lawsuit.  *See* KRS § 386.810(3)(x).  ONB cannot be held responsible for the Prior Lawsuit's failure to produce Plaintiffs' desired results. *See Pathways*, 113 S.W.3d at 89.

Within Count Six, Plaintiffs also allege ONB breached its duty by not effectively

---

[4] The Court presumes Plaintiffs intended Paragraph 80 to read "thereby damaging Plaintiffs."

supervising or auditing Frost Brown Todd's litigation efforts or legal bills.  ONB did have a duty

to "[i]ncur only costs that are reasonable in amount and appropriate to the investment

responsibilities of the account."  KRS § 286.3-277.  The Court finds that there is more than a

scintilla of evidence to support a finding that ONB breached this duty.  For example, Plaintiffs

state that Neill only challenged $400.00 out of $230,000.00 charged, paying the legal bills

without the proper diligence of a fiduciary.  Because a genuine issue of material fact exists

regarding whether ONB breached a duty of bad faith by not only incurring reasonable costs,

summary judgment on Count Six is not appropriate.

> **g.** **ONB Is Entitled To Summary Judgment On Count Eight Because Plaintiffs Have Not Presented Evidence Of Actual Injury As A Result Of ONB's Alleged Breach**

Count Eight of the Second Amended Complaint provides as follows:

88.   Defendants had a duty to insure that trust assets were used appropriately and that Martin Marietta accounted to the Jones Family Trusts for all limestone mined from the Lease quarry.

89.   In over five years of administering the Jones Family Trusts, Defendants reviewed Martin Marietta's books on one occasion, in a manner that forced Defendants to rely only on the representations of Martin Marietta, rather than on any independent review by the Defendants.  Furthermore, Defendants failed to verify royalty payments under the Lease with information Martin Marietta provided to the Commonwealth of Kentucky.

90.   Defendants received compensation for overseeing the Jones Family Trusts.

91.   Defendants have failed to perform, and breached, their fundamental duty of insuring that all royalties for the Lease are accounted for and properly paid.  Defendants' actions were in bad faith, in reckless disregard to the rights of the Plaintiffs.  As such, Plaintiffs are entitled to have all funds paid to Defendants for administration of the Jones Family Trusts returned to them and for payment of any damages as a result of Defendants' breach.

ONB argues that Count Eight fails as a matter of law because Plaintiffs have no evidence that

Martin Marietta failed to make any required Lease payment.  Plaintiffs respond that it is "immaterial" whether Martin Marietta actually paid the proper royalties, reasoning that by "not taking any time nor expenses to oversee the royalties, Old National acted in its own self interest and received a better return on the funds it was being paid to be the trustee."  ONB states that its monthly fee would not have been effected by, for example, hiring an expert to conduct an audit.

To recover for a bad faith breach of fiduciary duty, Plaintiffs must show that they suffered an actual injury as a result of ONB's breach of duty.  *See Pathways*, 113 S.W.3d at 88-89.  Plaintiffs admit that they "do not know whether Martin Marietta cheated them with respect to the amount of royalties."  They have presented no evidence that they suffered an injury flowing from any breach of duty.  Plaintiffs only argue that they paid a monthly fee to ONB, and this fee should be refunded because ONB did not act as a prudent investor.  There must be a harm suffered beyond the failure to fulfill a duty, however, or else the requirement of "consequent injury" would be meaningless.  Because Plaintiffs have not presented evidence of an actual injury suffered by them as a result of ONB's alleged breach of duty, ONB is entitled to summary judgment as a matter of law with regard to Count 8.  This evidence, however, may provide a background for other claims of Plaintiffs.

### h. ONB Is Entitled To Summary Judgment On Count Ten Because Plaintiffs Have Not Presented Evidence Of Actual Injury As A Result Of ONB's Alleged Breach

Count Ten of Plaintiff's Second Amended Complaint provides as follows:

97. Defendants have a duty to insure that all of the Jones Family Trusts' beneficiaries are treated impartially and provided with the same quality and quantity of information concerning the operation of the trusts.

98. Old National Trust failed in this duty by showing partiality to certain beneficiaries, by providing certain beneficiaries information not

27

available to other beneficiaries, and by holding at least one meeting where all beneficiaries but the Plaintiffs were initially invited to attend.

99.    Old National Trust failed to perform, and breached, their duty of impartiality to the Plaintiffs.  Old National Trust's actions were in bad faith, in reckless disregard to the rights of the Plaintiffs.  As such, Plaintiffs are entitled to have their share of funds paid to Old National Trust for administration of the Jones Family Trusts returned to them and for payment of any damages as a result of Old National Trust's breach.

ONB states that the C.R. Plaintiffs counsel attended the meeting in question, and so ONB could not have breached any duty of impartiality.  Plaintiffs state that the issue is not whether the C.R. Plaintiffs were represented at the meeting, "[t]he issue is that Old National promised continuous attention and professional services, but failed to ensure that they were impartial to all of the beneficiaries."  Plaintiffs have again not presented any evidence of actual harm suffered by not getting proper notice of the single meeting in question.  Therefore, ONB is entitled to summary judgment as to Count 10.  *See supra* Part II(B)(1)(g).  Again this is not a ruling that this evidence is irrelevant, but that it is not the basis for a stand alone claim.

### i.    ONB Is Entitled To Summary Judgment With Regards To Count Eleven Because There Is No Evidence That The C.R. Plaintiffs Are Members Of The Class That May Bring A Claim Under The KCPA

Count Eleven of the Second Amended Complaint alleges that Defendants violated Kentucky's Consumer Protection Act ("KCPA"), KRS 367.170, by acting "unfairly, unconscionably, falsely, and/or deceptively."  As ONB notes, only a "person who purchases or leases goods or services primarily for personal, family or household purposes" can bring a claim pursuant to the KCPA.  KRS 367.220(1).  The C.R. Plaintiffs do not fall within these class of persons.  Plaintiffs argue that the KCPA is broader than this class, citing KRS § 367.200.  This

provision does not stand for the proposition Plaintiffs cite, rather it "permits a court to order relief for the consumers on whose behalf the Attorney General has successfully brought suit." *Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 773 (W.D. Ky. 1998). There is no evidence that the C.R. Plaintiffs are members of the class that may bring a claim under the KCPA. Therefore, ONB is entitled to summary judgment with regards to Count Eleven.

> **j.**     **Plaintiffs Have Presented Enough Evidence Of Possible Fraud To Survive Summary Judgment With Respect To Count Twelve**

In Count Twelve of the Second Amended Complaint, Plaintiffs claim they are entitled to statutory punitive damages "pursuant to KRS 411.184 and KRS 411.186 because Defendants intentionally concealed material facts relating to Neill's actions with the intention of causing injury to Plaintiffs." KRS 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." "Fraud" is defined as "intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." KRS 411.184(1)(b). As the Court explained *supra* Part II(B)(1)(c), breach of fiduciary duty is not automatically equivalent to fraud in the context of this case. Plaintiffs remaining argument is that ONB intentionally concealed information from Plaintiffs related to ONB's liability. For example, Neill testified that no attorney specifically told him that he could cash the royalty checks, yet ONB argued in the prior lawsuit that it continued to cash checks after receiving notice of the breach under the advice of counsel. Drawing all reasonable inferences in favor of Plaintiffs, the

29

Court finds that they have presented enough evidence of possible fraud to survive summary judgment.

### k.   Summary Judgment On Count Thirteen Is Not Appropriate Because Genuine Issue Exists As To Whether ONB Recklessly Breached A Duty Owed To Plaintiffs

In Count Thirteen, Plaintiffs claim they are entitled to common law punitive damages due to Defendants' gross negligence.  ONB argues that there is no evidence of gross negligence.  The Supreme Court of Kentucky has explained that "[i]n order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).  For now, there is a genuine issue as to whether ONB recklessly breached a duty owed to Plaintiffs.  Therefore, summary judgment on Count Thirteen is not appropriate at this time.

### l.   As An Alternative To Count Two, A Material Fact Exists And Summary Judgment Is Not Appropriate With Respect To Count Fifteen

Count Fifteen of Plaintiffs' Second Amended Complaint provides as follows:

116.   If Neill's actions in accepting royalty payments, after notice of the breach and/or notice of termination, were a result of any advice or omission of advice from any attorney or law firm, Neill had a duty to pursue a legal malpractice claim against such law firm.

117.   The statute of limitations has expired in Kentucky for any such legal malpractice claims and, as such, Plaintiffs have been damaged if Defendants had a claim for legal malpractice for the Jones Family Trusts and failed to bring it.  Defendants' actions in not bringing such a claim, if one were available, were in bad faith, in reckless disregard to the rights of the Plaintiffs.

ONB argues that it had no duty to bring a malpractice claim, and that there is no evidence of bad faith in it not doing so.

A genuine issue of material fact exists with regards to whether ONB sought out legal advice prior to accepting the Lease royalty payments that waived Martin Marietta's breach of the Lease.  If it did not, then it may be liable under Count Two.  The Court understands Count Fifteen to be an alternative to Count Two– that if ONB accepted the payments pursuant to legal advice and cannot be held liable under Count Two, it should be held liable for not pursuing a malpractice action under Count Fifteen.  The Court finds that if the evidence shows ONB accepted the Lease payments pursuant to legal advice, not pursuing a malpractice action could possibly be considered a reckless breach of its duty to act as a prudent investor.  Therefore, summary judgment with respect to this Count is inappropriate at this time.

### 2.    Claims Asserted By The Eula Plaintiffs

ONB argues that all the claims asserted by the Eula Plaintiffs fail as a matter of law because ONB owed no fiduciary duty to them.  Instead, ONB states that Glenn Jones was the trustee of the Eula Trust during the time period in question.  Glenn Jones was named successor trustee of the Eula Trust on July 28, 1997.  The order appointing Glenn Jones as successor trustee states that he would serve with the assistance of ONB's predecessor.  The order also states that he had the option of delegating trustee duties to ONB's predecessor.  On August 1, 1997, Glen Jones entered into an "Investment Management Agreement" with ONB's predecessor.  The agreement appears to be a standard form and does not mention delegation of trustee duties.  It does provide that the bank "act as agent in the management, investment and distribution of those assets under the terms of this Agreement."  On July 1, 2002, Glen Jones resigned as trustee and ONB was appointed successor trustee.  Thus, from August 1, 1997, until July 1, 2002, ONB was Glenn Jones's agent with respect to the Eula Trust.

31

Plaintiffs argue that "[i]n accepting the delegation of a trust function from a trustee, an agent assumes a fiduciary role with fiduciary responsibilities." Restatement (Third) Trusts § 80, comment g. Plaintiffs state that by executing the agreement, Glenn Jones delegated its duties. ONB states that Glenn Jones never delegated its duties as trustee to ONB, he instead retained ONB's services under the agreement.

In *JP Morgan Chase Bank, N.A. v. Longmeyer*, the Kentucky Supreme Court examined an investment management agreement between a trustee and a bank. 275 S.W.3d 697, 704 (Ky. 2009). The agreement delegated the management of the trust funds to the bank. *Id.* at 700. The trustee argued that the bank owed a fiduciary duty to him arising out of the agreement. *Id.* at 704. The court disagreed and held that the agreement "established a contractual relationship" between the bank and the trustee. The court stated that the trustee's argument that the bank owed him a fiduciary duty found "no support in the law," and that the bank owed the trustee "only the duty to carry out the terms of the investment agency agreement." *Id.*

The facts of *Longmeyer* differ than those before this Court, but the Court cannot ignore *Longmeyer*'s explicit holding that an investment agency agreement between a trustee and a bank creates a contractual relationship, not a fiduciary one. *Id.* Therefore, the Court finds that ONB did not owe the Eula Plaintiffs any fiduciary duties. Contrary to Plaintiffs' argument in their reply, the investment management agreement does not grant ONB immunity, it merely means ONB would be liable under a breach of contract claim rather than a breach of fiduciary duty claim. Plaintiffs did not allege any breach of contract claims. Therefore, the fiduciary duty claims asserted by the Eula Plaintiffs in the Second Amended Complaint fail as a matter of law. For the reasons explained *supra* Part II(B)(1)(i), the Eula Plaintiffs cannot bring a KCPA claim.

Without any surviving underlying claims, the punitive damages counts fail as well.  Therefore, all claims alleged by the Eula Plaintiffs in the Second Amended Complaint are dismissed.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1.  Plaintiffs' Motion For Leave To File Second Amended Complaint (DN 170) is GRANTED;

2.  ONB may file an additional motion for summary judgment within 45 days from the entry of this order; Plaintiffs may have 15 days to respond, and ONB may have 10 days to reply;

3.  Without exception, both parties shall comply with the page limits set forth in LR 7.1;

4.  Plaintiffs will bear ONB's reasonable costs related to the motion for summary judgment, as well as ONB's amended Answer, not to exceed $10,000;

5.  Defendants' Second Joint Motion for Summary Judgment (DN 171) is GRANTED IN PART and DENIED IN PART;

6.  Defendants are entitled to summary judgment with respect to the C.R. Plaintiffs' claims in Counts 1, 3, 4, 5, 7, 8, 9, 10, 11 and 14 of the Second Amended Complaint, and every claim asserted by the Eula Plaintiffs; and

7.  Plaintiffs' Motion for Partial Summary Judgment on Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten of their Amended Complaint (DN 173) is DENIED.