UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:02-cv-00324-R

**LORI ANDERSON, et al.**  PLAINTIFFS

v.

**OLD NATIONAL BANCORP**
**and OLD NATIONAL TRUST COMPANY**  DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendants' Third Joint Motion for Summary Judgment (DN 192). Plaintiffs have responded (DN 194), and Defendants have replied (DN 195). For the following reasons, Defendants' Motion is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

This matter originally arose out of a dispute concerning the breach of a lease ("Lease"). Plaintiffs in this case are beneficiaries of the Charles R. Jones, Sr. Trust ("C.R. Trust") and the Eula Kathleen Jones Trust ("Eula Trust") (collectively "Jones Family Trusts" or "JFT"). The subject of the Lease is the Jones Family Trusts' primary asset, one of the largest limestone quarries in the United States. The original dispute involved the lessee quarry operator, Martin Marietta Materials, Inc. ("Martin Marietta"), and the Jones Family Trusts.

In November 1997, Martin Marietta removed and marketed approximately 2,000 cubic yards of soil from the property. This action became the basis of a lawsuit brought by the trustees of the Jones Family Trusts. The trustees argued that the removal and marketing of the soil constituted a breach of the Lease. The beneficiaries hoped that if the Lease terminated, they

would be able to negotiate a new lease with more favorable terms.

In this prior lawsuit ("Prior Lawsuit"), this Court found that Martin Marietta breached the Lease by marketing the surface soil. *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, No. 5:95-cv-289 (W.D. Ky. Feb. 8, 2000). However, the Court held that the trustees had waived their right to terminate the Lease because they accepted Lease payments after and with knowledge of Martin Marietta's breach. *Id.* The Sixth Circuit affirmed the Court's decision. *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, 22 F. App'x 546 (6th Cir. 2001).

Defendants Old National Bankcorp and Old National Trust Company (collectively "ONB" or "Old National") are the former trustee of the C.R. Trust. At times relevant to the present dispute, ONB was the trustee of the C.R. Trust and managed the Eula Trust. In the current lawsuit, among other claims, Plaintiffs allege that ONB breached its fiduciary duties to Plaintiffs by accepting Lease payments that resulted in a waiver of Martin Marietta's breach of the Lease.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

ONB moves for summary judgment on the remaining claims in Plaintiffs' Second Amended Complaint: Count Two (Breach of Fiduciary Duty/Bad Faith for Cashing Royalty Checks); Count Six (Breach of Fiduciary Duty/Bad Faith for Proceeding with Prior Lawsuit); Count Twelve (Statutory Punitive Damages); Count Thirteen (Common Law Punitive Damages); and Count Fifteen (Breach of Fiduciary Duty/Bad Faith for Failure to Bring Claim).

A.  The C.R. Trust's waiver of the Lease breach occurred after ONB learned Martin Marietta marketed the surface soil.

As an initial matter, the parties disagree as to when waiver of the Lease breach occurred. ONB argues that waiver occurred on November 7, 1997, the first time ONB deposited Martin Marietta's Lease payment after beneficiaries Jimmy Jones and Glenn Jones learned of the dirt removal. Plaintiffs argue that waiver may have occurred at a later date.

In the Prior Lawsuit, this Court held that "Plaintiffs' acceptance of lease payments after and with knowledge of Defendant's breach waived Plaintiffs' right to terminate the lease for that breach." *First Nat'l*, No. 5:95-cv-289 at 1. The Court explained that "Kentucky caselaw demonstrates that a lessor who accepts lease payments after knowing of a default waives his right to enforce forfeiture." *Id.* at 7 (citing *Rich v. Rose*, 99 S.W. 953, 955 (Ky. 1907); *Venters v. Reynolds*, 354 S.W.2d 521 (Ky. 1962)). The Sixth Circuit, affirming, stated the "general rule" as "when rent is accepted by a lessor with knowledge of a particular conduct which is claimed to be a default on the part of the lessee, acceptance of the rent constitutes a waiver by the lessor of the lessee's default." *First Nat'l*, 22 F. App'x at 549. The court concluded:

> In this case, it is not disputed that representatives of the Jones Trusts had knowledge of this earth removal when it occurred in November 1997. Despite this knowledge, the Jones Trusts continued to accept Martin Marietta's lease payments through July 1998. Under Kentucky law, by accepting these payments with knowledge of the alleged breach, the Jones Trusts waived their right to terminate the Lease for this breach.

*Id.* at 549-50.

ONB argues that the Sixth Circuit decision "holds that the C.R. Trust's waiver of the breach occurred on November 7, 1997, the date the C.R. Trust first accepted a Lease payment with knowledge of Martin Marietta's dirt removal" because Jimmy Jones and Glenn Jones knew

4

of the dirt removal on November 5, 1997. ONB reads too far into the court's holding. Neither the Sixth Circuit nor this Court cited November 7, 1997, as the waiver date. The rule, as stated by both courts, is that waiver occurs when the lessor, with knowledge of the conduct constituting default, accepts rent. Whether Jimmy Jones and Glenn Jones's knowledge of the dirt removal is imputed to the C.R. Trust and its trustee is not a question the courts previously addressed.

The lessors in this case are the C.R. Trust and the Eula Trust. The Court could find no law supporting ONB's assertion that Jimmy and Glen Jones's knowledge of the dirt removal on November 5, 1997, is imputed to ONB as trustee of the C.R. Trust. *Compare, e.g.*, Restatement (Second) of Agency § 272 ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information.").

ONB states that Michael Neill, ONB's trust officer, learned of the dirt removal on November 21, 1997. Plaintiffs argue that ONB knew about the dirt removal prior to November 7, 1997. As evidence, Plaintiffs point to an affidavit submitted by Glenn Jones in which he stated that he took photographs and video of the soil removal on November 5, 1997, and delivered them to the bank on that or the following day.[1] The Court finds that these conflicting pieces of evidence create a factual issue as to when ONB, as trustee of the C.R. Trust, became aware of the soil removal.

More importantly, the parties' dispute over when ONB learned of the dirt removal misses

---

[1] Plaintiffs also assert that ONB admitted that it became aware of the soil removal on November 5, 1997, in the prior lawsuit. This assertion is unfounded. The interrogatory answer only states Neill learned of the soil removal after a beneficiary called him asking if he knew about it. The answer does not provide any date.

5

a key point: Martin Marietta did not breach the Lease by removing dirt from the property. Martin Marietta breached the Lease by marketing the dirt. *First Nat'l*, No. 5:95-cv-289 at 4-7; *see also First Nat'l*, 22 F. App'x at 548. As detailed in the Prior Litigation, Martin Marietta agreed to provide dirt for fill material free of charge to a bridge contractor so long as the contractor agreed to purchase limestone from Martin Marietta and remove the dirt from the property. *First Nat'l*, No. 5:95-cv-289 at 2. The Court found that the Lease did not grant Martin Marietta the right to "use" the surface material in marketing the limestone. *Id.* at 6. The Court distinguished between the 2,000 tons of dirt removed "as a marketing scheme and used by outsiders as fill" and the 3,000,000 cubic tons of surface material previously removed and merely "piled and stored on adjacent tracks of land." *Id.* at 6-7. Because marketing was the default, waiver could not have occurred until after the trustees learned Martin Marietta marketed the dirt.

### B. ONB is not entitled to summary judgement as to Count Two.

ONB makes a variety of arguments as to why Count Two of Plaintiffs' Complaint fails as a matter of law. The Court will address each in turn.

#### 1. *Glenn Jones could not have waived the breach alone.*

ONB argues that it could not have terminated the Lease because the Eula Trust waived the forfeiture claim. The Court disagrees. As co-lessors, the C.R. Trust and the Eula Trust are tenants in common relative to the Lease. *See Martin v. Martin*, 878 S.W.2d 30, 31 (Ky. Ct. App. 1994) ("The primary characteristic of a tenancy in common is unity of possession by two or more owners."). All tenants in common must join together in order to declare a forfeiture. *Union Gas & Oil Co. v. Gillem et al.*, 279 S.W. 626, 628 (Ky. 1926). Similarly, one tenant in

6

common, acting alone, cannot waive forfeiture. *Penrose et al. v. Penn Forest Coal Co. et al.*, 137 A. 670, 671 (Pa. 1927) (finding forfeiture of lease not waived when only one tenant in common had knowledge of the conduct constituting breach). One tenant in common cannot act for another tenant in common. *See Union Gas*, 279 S.W. 626, 629. In cases such as this, waiver of a breach of a lease could not occur until all tenants in common have knowledge of the conduct constituting default. *See Penrose*, 137 A. at 671; *First Nat'l*, 22 F. App'x at 549. Thus, here, waiver did not occur until after both Glenn Jones and ONB learned that Martin Marietta had given the removed dirt to a bridge project in exchange for the contractor purchasing limestone from Martin Marietta.

> 2. *Plaintiffs' acceptance of C.R. Trust distributions did not waive their claim against ONB for breach of fiduciary duty.*

Second, ONB argues that Plaintiffs' acceptance of the C.R. Trust distributions waived their claim against ONB for breach of fiduciary duty (Count Two). In Kentucky, "a waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right." *Harris Bros. Constr. Co. v. Crider*, 497 S.W.2d 731, 733 (Ky. 1973).

Plaintiffs' acceptance of the distribution checks was not inconsistent with their right to bring a claim against ONB for breach of fiduciary duty. ONB's waiver of the Lease breach meant that the Lease would remain in effect. Thus, Plaintiffs were merely accepting the payments that they were entitled to from Martin Marietta. The Court could not find any Kentucky law requiring beneficiaries to refuse trust payments in order to bring a cause of action against a trustee or former trustee. Thus, Plaintiffs did not waive their claim against ONB for breach of fiduciary duty.

3.  *The terms of the C.R. Trust do not preclude Plaintiffs' claim for damages.*

Third, ONB argues that Plaintiffs' claim for damages is foreclosed by the terms of the C.R. Trust. ONB characterizes Plaintiffs' damages as "the anticipation of income from the C.R. Trust." Because the trust bars any person from having "any interest in or right to any specific asset or divided interest in and to the trust estate," according to ONB, Plaintiffs have no right to assert individual claims related to any C.R. Trust lease or to the income generated from it.

Plaintiffs' describe their damages as "the difference between what they are currently receiving and what they could have received had Old National not breached its fiduciary duties and waived the Lease breach." They are not seeking to attach C.R. Trust income or assert a right to any specific interest in the trust estate. They are seeking damages from ONB, not from the C.R. Trust. Measuring their damages as the difference between what they actually received and what they would have received if the Lease was renegotiated is not equivalent to claiming a right to any C.R. Trust asset and therefore is not barred by the terms of the C.R. Trust.

4.  *Count Two may be asserted by Plaintiffs.*

Fourth, ONB argues that Count Two can only be asserted by the current trustee. As the Court has explained in detail in its prior motions, Count Two may be asserted by Plaintiffs. *See* Mem. Op. & Order, Dec. 10, 2009; Mem. Op. & Order, July 29, 2009.

5.  *ONB may have acted in bad faith if it did not seek out legal advice before accepting and cashing the Lease royalty payments that caused a waiver of Martin Marietta's breach of the Lease, as alleged in Count Two.*

As set forth in the Court's December 10, 2009 Opinion, bad faith is the standard for trustee liability in this matter. In other words, ONB may only be held liable for its acts and omissions in bad faith. This includes acts and omissions made in reckless disregard of

8

beneficiaries' rights. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Bad faith on the part of a trustee may also "contemplate[] a state of mind affirmatively operating with a furtive design or with some motive of self-interest or ill will, or for an ulterior purpose." *Warfield Natural Gas Co. v. Allen*, 59 S.W.2d 534, 538 (Ky. 1933). Negligence or a simple error in judgment, however, does not establish bad faith. *See Blue Cross Blue Shield of Ky., Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985).

Kentucky Revised Statutes § 286.3-277 outlines the standards for a bank acting as a fiduciary. The statute provides that "a bank empowered to act as a fiduciary or trust company, when . . . managing property held in a fiduciary capacity, shall act as a prudent investor would" and exercise "reasonable care, skill and caution." KRS § 286.3-277. A "prudent man" is further defined as a "trustee whose exercise of trust powers is reasonable and equitable in view of the interests of income or principal beneficiaries or both, and in view of the manner in which men of ordinary prudence, diligence, discretion, and judgment would act in the management of their own affairs." KRS § 386.800(3). Additionally, if a trustee "has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has." Restatement (Second) Trusts § 174; *Bryan v. Sec. Trust Co.*, 176 S.W.2d 104, 110 (Ky. 1943). As a trustee, a bank also must "[c]onform to fundamental fiduciary duties of loyalty and impartiality," "[a]ct with prudence in deciding whether and how to delegate authority and in the selection and supervision of agents," "[i]ncur only costs that are reasonable in amount and appropriate to the investment responsibilities of the account," KRS § 286.3-277, "administer a trust expeditiously for the benefit of the beneficiaries," KRS § 386.705, and "keep the beneficiaries of the trust reasonably informed of the trust and its administration," KRS § 386.715.

In Count Two, Plaintiffs state that ONB breached its fiduciary duty in bad faith by failing to seek out legal advice before accepting and cashing the Lease royalty payments that caused a waiver of Martin Marietta's breach of the Lease. The Court previously concluded that it is possible that a jury could determine ONB recklessly breached its duty to act with reasonable care, skill and caution if it did not seek out such legal advice. *See* KRS § 286.3-277; Restatement (Third) Trusts § 77, comment b(2) ("Taking the advice of legal counsel . . . evidences prudence on the part of the trustee."); 12 C.F.R. § 9.5(d).

Because a question of fact still exists as to when waiver occurred, the Court cannot yet determine whether ONB failed to seek out legal advice before that point. Additionally, there are not sufficient facts before the Court to make a judgment as a matter of law as to bad faith. This may best be determined at trial.

    **C.    ONB is entitled to summary judgement as to Count Six.**

Within Count Six of the Complaint, Plaintiffs allege that ONB breached its duty by not effectively supervising or auditing Frost Brown Todd's litigation efforts or legal bills.[2] The Court explained in its December 2009 Opinion that ONB did have a duty to "[i]ncur only costs that are reasonable in amount and appropriate to the investment responsibilities of the account." KRS § 286.3-277. The Court determined that there was more than a scintilla of evidence to support a finding that ONB breached this duty because Plaintiffs stated that Neill only challenged $400.00 out of $230,000.00 charged, paying the legal bills without the proper

---

[2] As held previously, ONB did not have an independent duty to conduct legal research and ascertain the possible success of bringing the Prior Lawsuit. *See* KRS § 386.810(3)(x). ONB also cannot be held responsible for the Prior Lawsuit's failure to produce Plaintiffs' desired results. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).

diligence of a fiduciary.

ONB now argues that Count Six fails because Plaintiffs have no right to pursue damages allegedly sustained by the C.R. Trust. ONB also maintains that Plaintiffs' have not established bad faith. As explained in the Court's December 2009 decision, the terms of the C.R. Trust bar beneficiaries from asserting claims on behalf of the trust. Only the trustee, now Bank of Oklahoma, may pursue a claim by the C.R. Trust. Plaintiffs, however, may make claims on their own behalf and seek damages for reduced income payments under the C.R. Trust. ONB waived any real party in interest objections with regard to these claims.

To survive summary judgment, Plaintiffs must show that ONB breached its duty to only incur reasonable and appropriate costs, that it did so in reckless disregard of Plaintiffs' rights, and that this effected Plaintiffs' income payments under the C.R. Trust. Plaintiffs state that they would have received higher income payments if ONB had not paid unnecessary legal fees. They argue that a review of the time sheets would have led a reasonable person to inquire more about Frost Brown Todd's bills, but instead ONB simply paid the bills without the proper diligence of a fiduciary.

Upon further consideration, and after a thorough reexamination of the parties' arguments and evidence, the Court finds that Plaintiffs' have not shown that ONB acted in bad faith. Plaintiffs' evidence demonstrates that ONB may have acted negligently by not challenging more of Frost Brown Todd's bills, but does not present a jury question as to whether ONB acted in reckless disregard of Plaintiffs' rights. Additionally, the Court notes that it is not inclined to entertain another motion on this issue.

### D. ONB is entitled to summary judgement as to Count Twelve.

In Count Twelve of the Second Amended Complaint, Plaintiffs claim they are entitled to statutory punitive damages "pursuant to KRS 411.184 and KRS 411.186 because Defendants intentionally concealed material facts relating to Neill's actions with the intention of causing injury to Plaintiffs." KRS 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." "Fraud" is defined as "intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." KRS 411.184(1)(b). Breach of fiduciary duty is not automatically equivalent to fraud in the context of this case.

In the December 2009 Opinion, the Court found that Plaintiffs had presented enough evidence of possible fraud to survive summary judgment because Neill testified that no attorney specifically told him that he could cash the royalty checks, yet ONB argued in the Prior Lawsuit that it continued to cash checks after receiving notice of the breach under the advice of counsel. In light of clarifying facts now presented by ONB, the Court finds that there is no longer enough evidence of fraud to survive summary judgment.

In the Prior Lawsuit, ONB argued in response to Martin Marietta's summary judgment motion that the Jones Family Trusts continued to cash checks after providing Martin Marietta with notice of breach "under the advice of prior counsel." In a footnote to this statement, ONB stated that "[i]nitially, the South Carolina law firm did not advise the Jones Trust that they should not cash the royalty checks. However, after retaining Whitlow, Roberts, Houston & Straub, the Jones Trust were instructed to stop cashing the royalty checks," citing Neill's

deposition. This footnote shows that the statement that ONB continued to cash checks "under the advice of prior counsel" was a poor choice of language and not an accurate description of what occurred. As ONB now admits, the statement was referring to the fact that the South Carolina law firm did *not* advise the JFT to cease cashing Lease royalty checks. This statement is consistent with Neill's testimony. Therefore, the statement does not establish an evidentiary basis for fraud.

### E. ONB is not entitled to summary judgement as to Count Thirteen.

In Count Thirteen, Plaintiffs claim they are entitled to common law punitive damages due to Defendants' gross negligence. The Supreme Court of Kentucky has explained that "[i]n order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985). Because there remains a genuine issue as to whether ONB recklessly breached a duty owed to Plaintiffs, summary judgment on Count Thirteen is not appropriate at this time. The Court notes that to succeed on this claim against ONB, Plaintiffs must prove that their income payments were diminished as a result of ONB's gross negligence.

### F. ONB is not entitled to summary judgement as to Count Fifteen.

In Count Fifteen, Plaintiffs contend that if Neill's actions in accepting royalty payments "were a result of any advice or omission of advice from any attorney or law firm, Neill had a duty to pursue a legal malpractice claim against such law firm." As the Court stated in its December 2009 Opinion, Count Fifteen is an alternative to Count Two– if the evidence shows that ONB accepted the payments pursuant to legal advice, or the omission of legal advice, and

cannot be held liable under Count Two, it should be held liable for not pursuing a malpractice action under Count Fifteen. The Court has already found that not pursuing a malpractice action could possibly be considered a reckless breach of its duty to act as a prudent investor. A genuine issue of material fact still exists with regards to what legal advice, if any, ONB received prior to accepting the Lease royalty payments that waived Martin Marietta's breach of the Lease. Therefore, summary judgment with respect to this Count is inappropriate at this time.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Third Joint Motion for Summary Judgment (DN 192) is DENIED IN PART and GRANTED IN PART. Plaintiffs may proceed with Counts Two, Thirteen and Fifteen of their Second Amended Complaint. Counts Six and Twelve are dismissed.