# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:02-CV-00324-R

**LORI ANDERSON,** *et al.*　　　　　　　　　　　　　　　　　　　　　**PLAINTIFFS**

**v.**

**OLD NATIONAL BANCORP &**
**OLD NATIONAL TRUST COMPANY**　　　　　　　　　　　　　　**DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Martin Marietta Materials, Inc.'s Motion to Quash a Subpoena Duces Tecum (DN 204) served on September 17, 2010, by the Defendants in this action, Old National Bancorp and Old National Trust Company. Defendants have responded (DN 205) and filed a Motion to Compel Martin Marietta to Comply with the subpoena (DN 206). Martin Marietta has replied (DN 211). This matter is now ripe for adjudication. For the reasons that follow, Martin Marietta's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This matter originally arose out of a dispute concerning the breach of a lease ("Lease"). Plaintiffs in this case are beneficiaries of the Charles R. Jones, Sr. Trust ("C.R. Trust") and the Eula Kathleen Jones Trust ("Eula Trust") (collectively "Jones Family Trusts"). The subject of the Lease is the Jones Family Trusts' primary asset, the Three Rivers Quarry ("Quarry"). The original dispute involved the lessee quarry operator, Martin Marietta Materials, Inc. ("MM"), and the Jones Family Trusts. In November 1997, MM removed and marketed approximately 2,000 cubic yards of soil from the property. This action became the basis of a lawsuit brought by the trustees of the Jones Family Trusts. The trustees argued that the removal and marketing of

the soil constituted a breach of the Lease. The beneficiaries hoped that if the Lease terminated, they would be able to negotiate a new lease with more favorable terms.

In this prior lawsuit ("Prior Lawsuit"), this Court found that MM breached the Lease by marketing the surface soil. *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, No. 5:95-cv-289 (W.D. Ky. Feb. 8, 2000). However, the Court held that the trustees had waived their right to terminate the Lease because they accepted Lease payments after and with knowledge of Martin Marietta's breach. *Id.* The Sixth Circuit affirmed the Court's decision. *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, 22 F. App'x 546 (6th Cir. 2001).

Defendants Old National Bankcorp and Old National Trust Company (collectively "ONB" or "Old National" or "Defendants") are the former trustees of the C.R. Trust. At times relevant to the present dispute, ONB was the trustee of the C.R. Trust and managed the Eula Trust. In the current lawsuit, among other claims, Plaintiffs allege that ONB breached its fiduciary duties to Plaintiffs by accepting Lease payments that resulted in a waiver of MM's breach of the Lease. In June of 2007, in response to a subpoena for documents pertinent to this litigation, MM released a variety of information detailing the Quarry's operations as well as royalty payments made to the Jones Family Trusts.[1] The information was subject to a protective

---

[1] The subpoena of 2007 petitioned for the following:

1. All geological data from [the Quarry], including logs and drill hole assessments from 1997 to present.
2. All electronic Quarry maps, in AutoCAD format, currently in use by [MM].
3. The Quarry five-year mine plans in effect in 1997 and currently, including mining projections, and all amendments and attachments thereto, and the remaining reserves assigned to the Quarry.
4. The Quarry mine plan(s), including all amendments and attachments, that

2

order that forbade either litigant from disclosing MM's confidential information. DN 81.

Ahead of scheduled settlement negotiations between the parties, Defendants served MM with a subpoena, requesting materials that would "provide [Defendants] with a range of information relative to Plaintiffs' claims for damages." DN 205. MM objects to the subpoena, specifically stating that these requests are unduly burdensome or seek commercial information that is traditionally protected from disclosure under Federal Rule of Civil Procedure 45. MM also urges the Court to quash the subpoena, as many of the documents are available from the new trustee of the Jones Family Trusts, the Bank of Oklahoma ("BOK"). Defendants respond to these objections, stating the following: (1) disclosure of data provided by MM to anyone outside the litigation is prevented by the protective order entered by this Court on June 21, 2007; (2) much of the material requested has already been disclosed and this subpoena simply petitions for updated records; (3) the information this subpoena requests was disclosed in the Quarry's past lease renegotiations between MM and the Jones Family Trust, and therefore the data is not

---

were in effect at any time from 1997 to 2005.
5. All documents and information provided by or on behalf of Martin Marietta, relating to the Quarry, to the Kentucky Revenue Cabinet or any other government entity relating to the Kentucky unmined mineral tax and/or mineral severance tax for the years 1997 to present.
6. For the Quarry, from January 1, 1997, to September 30, 2005, records of payments to the trustee of the [Jones Family Trusts] and royalty remittance tickets/letters to the trustee of the Jones Family Trust.
7. MM's monthly and annual operation reports for the Quarry form January 1, 1997 to the present, including, but not limited to, profits and losses, quantity and value of limestone sold, and quantity of overburden and/or topsoil moved.
8. Any projections, estimates or other writings referring to the potential costs that would be incurred by MM in the course of terminating its operations at the Quarry.

DN 205-3 at 4.

confidential or commercially sensitive.

## STANDARD & ANALYSIS

Federal Rule of Civil Procedure 45 allows parties and non-parties alike to quash subpoenas issued in the course of discovery. District Courts must quash or modify subpoenas that "subject a person to undue burden," Fed. R. Civ. P. 45(c)(3)(A)(iv), and have discretion to quash or modify subpoenas where the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information." *Id*. at 45(c)(3)(B)(i). Protection from subpoenas under Rule 45 "'tracks the provisions of Rule 26(c)' which provides for the issuance of protective orders." *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *2 (W.D. Mich Aug. 24, 2005) (quoting *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)). "The application of these provisions requires the Court to balance several competing factors: (1) relevance, (2) need, (3) confidentiality, and (4) harm." *Id*. In weighing these various factors, courts proceed cautiously in enforcing a subpoena when the information is being sought from a non-party to the litigation. *See e.g.*, *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999); *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

### I. Undue Burden

MM states that the second request in the subpoena for records of royalty payments to the Jones Family Trusts from January 2005 to present is unduly burdensome.[2] MM also generally

---

[2] Specifically, the second request from the subpoena asks for the following:

For the Quarry, for the period from January 1, 2005, to the present, all records of

4

asserts that compliance with the request is unwarranted as "the documents requested can be obtained from some other source that is more convenient, less burdensome, or less expensive." DN 204-1 at 3 (citation and internal quotation marks omitted).

Whether the burden of the subpoena is "undue requires weighing 'the likely relevance of the requested material . . . against the burden . . . of producing the material.'" *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (quoting *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)). "A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *Id*.

This Court is not persuaded by MM's argument for two reasons. First, in its Motion to Quash this subpoena, MM offers only a vague, unsupported claim that compiling this information will be unduly burdensome. No detail is offered as to the number of documents this request encompasses, the costs required to prepare the information, or the time necessary to comply with this aspect of the subpoena. Plainly stated, MM has offered insufficient evidence to demonstrate the burden imposed upon it. Second, MM disclosed identical information in response to a subpoena issued in June of 2007 for this litigation, detailing royalty payment to the Jones Family Trusts from January 1, 1997, to September 30, 2005. From the record before it, this Court believes that as the first subpoena did not present an undue burden upon MM, this subpoena should be treated similarly. For these reasons, the second request of this subpoena cannot be construed as overly burdensome.

---

>   payments to the trustee of the [Jones Family Trust] and all royalty remittance advices/letters from Martin Marietta to the trustee of the Jones Family Trust.

DN 204-2 at 4.

## II. Commercial Information

MM declares that requests one, three, four, and five of the subpoena petition for commercial information, and consequently, it is entitled to protection from disclosure.

"Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from who the information was obtained." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) (citing *Allnet Commc'n Servs, Inc. v. FCC*, 800 F. Supp. 984, 988 (D.D.C. 1992); *Zenith Radio Corp. v. Matsuchita Elec. Indus. Co.*, 529 F. Supp. 866, 889-91 (E.D. Pa. 1981)). "In determining whether information designated as 'confidential' . . . must be disclosed, courts apply a shifting-burden analysis." *Allen*, 190 F.R.D. at 525 (citing *R & D Bus. v. Xerox*, 152 F.R.D. 195 (D. Col. 1993)). The party upon whom the subpoena is served must initially show that the information sought is confidential and that disclosure may be harmful. *Id*. The burden then falls upon the requesting party to demonstrate that the "information is both relevant and necessary to the pending action." *Id*. "[T]he court must [then] balance the need for the information against the possible harm of disclosure." *Id*.

Requests No. one, three, four, and five in the subpoena seek disclosure of the following:

1. The [Quarry] mine plan(s), including all amendments and attachments, that were in effect at any time from 2004 to the present.
. . .
3. Martin Marietta's monthly and annual operations reports for the Quarry from January 1, 2007 to the present, including, but not limited to, profits and losses and quantity and value of limestone sold.
4. All documents disclosing, or from which a determination can be made, regarding the average price per ton paid to Martin Marietta for the sale of limestone products mined from the Quarry for each month from January 1, 2004 to the present.
5. All documents disclosing, or from which a determination can be made, regarding the tonnage of limestone mined from lands owned by the Jones

Family Trust at the Quarry from January, 2004 to the present.

DN 204-2 at 4. In its motion, MM specifically states that since its lease of the Quarry is to be renegotiated in 2013, disclosure of the information in these requests would provide the Jones Family Trusts and the beneficiaries access to data to which they are typically not entitled. MM alleges that the Jones Family Trusts could then use the information to leverage higher royalty payments in the new lease. Helen Haynes, general counsel for MM, also claims that if certain information contained within these requests were known to MM's "customers, competitors, or suppliers" in the rock-aggregate business, then it would be disadvantaged in this highly competitive market. DN 204-3 at 2.

Hayne's fears that competitors or other suppliers of rock aggregate will acquire an advantage over MM if this information is disclosed are not entirely unfounded; they are however insufficient for the Court to grant this motion. Following the subpoena of June 2007, MM released similar commercial information to these exact litigants. In conjunction with that subpoena, the parties agreed to a protective order whereby the information disclosed by MM was deemed confidential and closely guarded by both parties. DN 81. MM does not allege in this motion that either of the parties have mishandled or released the previously disclosed information to its competitors in the rock aggregate business. Moreover, neither of the parties in this litigation is involved in the production of rock aggregate. The Court sees no reason why a similarly stringent protective order safeguarding this commercial information could not assuage whatever concerns MM may have in safeguarding the requested information from its competitors.

Regarding the renegotiation of the lease rates of the Quarry to take place in 2013, MM

concerns are more legitimate. In her affidavit, Haynes says the following:

> [T]he lease between [MM] and the Jones Family Trusts contains a reopener provision that provides for a renegotiation of lease rates every ten years, with the next reopener in 2013. Should the Jones Family Trusts have access to [MM's] confidential and proprietary business information, information to which it would not otherwise be entitled, [MM] would be at a competitive disadvantage in its negotiations under the parties' 99-year lease.

DN 204-3 at 2. The Court recognizes that the negotiations for the lease undoubtedly involve complicated financial forecasting for both MM and the Jones Family Trusts, sensitive to numerous variables. It is only reasonable to assume that if certain sensitive information was available to the Jones Family Trusts prior to the negotiations, it could be used to leverage from MM more favorable terms in the lease. In addition, while the Jones Family Trusts do not represent competitors to MM per se, in the context of these lease negotiations, the two parties maintain divergent interests. As such, this Court believes that MM has demonstrated that the requested information is both confidential and commercial and its release could be harmful to its position in the 2013 renegotiation.

Progressing to the next step in the analysis, Defendants must show that the information they seek from the subpoena is relevant and necessary to the current litigation. Neither Defendants nor MM dispute the relevance of the materials sought. With regard to necessity, Defendants aver that "Plaintiffs' calculation of damages makes assumptions regarding (1) the amount of past and future production from the Quarry and (2) the past, present, and future sales prices of limestone." DN 205 at 6. They state that to properly scrutinize Plaintiffs' calculations and so their own experts can properly evaluate these damage estimates, Defendants require the information described in the subpoena. Defendants also charge that the information is not available from any other source and constitutes a critical part of their defense. Considering the

8

complexity of the litigation at hand as well as the largess of the potential damages in this action, Defendants have satisfied their burden in demonstrating the relevance and need for this particular information.

The Court must now "balance the need for the information against the possible harm of disclosure." *Allen*, 190 F.R.D. at 525. In this balancing, the Court will address each of the remaining items for which Defendants petition in turn.

### a. The Quarry Mine Plans

The subpoena's first request describes the mine plan, including all the "amendments and attachments" from 2004 to present. DN 204-2 at 4. In their response to this Motion to Quash, Defendants also demand access to the Five Year Mine Plans from 2010 to 2014. DN 205 at 6. This information is required so that defense experts can "project annual production rates, estimated future royalty payments to the Trust, and the location of the mining activities on Trust property and perimeter land." *Id*. It will also allow Defendants to estimate the future pricing and costs of mining in the Quarry. MM objects to the production of this information, stating that its "plans for expansion or reduction of its production facilities are constantly safeguarded." DN 211 at 5. MM also claims that the plans it previously released in compliance with the 2007 subpoena were already "obsolete" and were only relevant to the dirt removal at the Quarry in the late 1990s. *Id*.

Defendants respond that MM has overstated their claim of confidentiality, as this information was available to the Trust's beneficiaries during the prior lease renegotiation. In the Quarry's lease renegotiations that took place in 2006, MM and BOK, the new trustee of the Jones Family Trusts, participated in binding arbitration to decide the fair and equitable terms of

9

the new lease. Prior to the hearing, the arbitrator ordered MM to provide BOK with the following projections relating to the Quarry:

>   (a)   A mine map depicting the location of [MM's] projected mining/quarrying operations at the [Quarry];
>   (b)   Development plans and financial projections for the [Quarry];
>   (c)   Projected production and sales volumes for each product for the [Quarry];
>   (d)   Projected overburden for the [Quarry];
>   (e)    Projected mine operating costs, cash and non-cash, for the [Quarry];
>   (f)   Projected capital expenditures for the [Quarry]
>   (g)   Anticipated material changes in distribution charges in the distribution costs for the points of sale.

DN 205-6 at 3, 6.

In light of this past disclosure, as well as the release of past mining plans pursuant to the subpoena of 2007, the Court believes the potential harm that would befall MM in disclosing the updated mine plans is minimal. The arbitrator's past ruling indicates that the beneficiaries of the Jones Family Trust would likely be entitled to this information during the 2013 lease renegotiation; therefore, MM can hardly be prejudiced during these talks by the early release of this information. Furthermore, Defendants require the data to analyze and challenge Plaintiffs' damage calculations and the potential liability that Defendants face in this action is substantial. When weighing the need of Defendants to this information with the slight harm to MM with the release the Quarry's mine plan, the Court believes that disclosure is appropriate.

>   b. Monthly and Annual Operations Reports of the Quarry from January 1, 2007 to Present

Defendants state that for their expert witnesses to evaluate the Plaintiffs' proffered damages, they "require the actual production and sales numbers from 1998 to 2010." DN 205 at 6. This information falls within the third request of the current subpoena, which in turn is essentially indistinguishable to the seventh request from the subpoena of June 2007. *See* DN

10

204-2 at 4; DN 205-3 at 4. Since MM has previously released near-identical information during the course of this action, the possible harm from the disclosure of this information is low. Moreover, after reviewing the arbitrator's past order in 2008, the Jones Family Trusts will most likely be entitled to past monthly and annual operations reports during the lease renegotiations of 2013. *See* DN 205-6 at 2-6. Compared with relative need for the information by Defendants in litigating this claim, disclosure of this information is proper.

### c. Average Price per Ton of Limestone Sold from the Quarry from 2004 to Present

Defendants ask for access to information that would allow them to determine the average price per ton paid to MM for limestone products mined from the Quarry from January 1, 2004, to present. DN 204-2 at 4. Defendants aver that this information will be compared to MM's price forecasts so that Plaintiffs' allegations of future damages may be measured. While alleging that this information is overly sensitive to be released, MM also objects on the grounds that this the data was not requested or provided in the subpoena of 2007 and that whether the information was released during the lease's arbitration in 2006 is irrelevant.

The facts show that this information is neither overly confidential, nor so sensitive as to injure MM's position if disclosed. In 2006, the arbitrator ordered MM to produce figures for the previous five years on the monthly production tonnage of each product from the Quarry and the monthly sales tonnage for each product. DN 205-6 at 2, 6. Although this information and the data requested in the current subpoena are not identical, they are sufficiently similar to support the Court's conclusion that the Jones Family Trusts would be entitled to review the average price per ton of limestone products sold from the Quarry during the 2013 lease renegotiation. Consequently, MM's future lease negotiations will not be harmed by this information's release.

### d. Quantity of Limestone Mined from the Jones Family Trust Property and Quantity of Limestone mined from Perimeter Lands from January 2004 to Present

Defendants request documentation whereby it may be ascertained the "total tonnage of limestone mined from the lands owned by the Jones Family Trust" as well as the tonnage mined from the surrounding land from 2004 to present. DN 204-2 at 4. Defendants say that the information is required to "determine the actual production of the Trust property" and to estimate the limestone reserves in and surrounding the Trust Property. DN 205 at 7.

A closer review of the current subpoena and the evidence submitted with this motion shows Defendants are not entitled to this data. These figures were not petitioned for or released with the 2007 subpoena and were never released in the arbitrator's 2006 order.[3] It also remains unclear to the Court how the mining operations now occurring in the lands surrounding the Quarry and not owned by the Jones Family Trust is necessary information for Defendants' damages calculations. Most importantly however, Defendants have not offered sufficient evidence that these figures are necessary to examining Plaintiffs' damages calculations. The previously discussed information in the first four requests should supply ample data for Defendants to prepare for the settlement negotiations and trial.

### III. Information Obtainable from Another Source

Lastly, MM argues that the subpoena is improper because additional documents may be "obtained from some other source that is more convenient, less burdensome, or less expensive."

---

[3] In the arbitrator's order, MM was required to release information relating to the Quarry. DN 205-6 at 2-6. However, the fifth request of the subpoena asks for information regarding all land owned by the Jones Family Trust as well as the perimeter lands. DN 204-2 at 4. To the extent that there are lands separate from the Quarry that are also held by the Jones Family Trusts, information regarding that area in the possession of MM was not previously disclosed by the arbitrator's order. *See* DN 205-6 at 2-6.

DN 211 at 6 (citing Fed. R. Civ. P. 26(b)(2)(C)(i)).  MM states that BOK, as the successor trustee of the Jones Family Trusts, is the appropriate party upon whom these requests should be served.  It also charges that as BOK is already a party in this litigation in the state courts of Kentucky, BOK is "better position to provide the appropriate information." *Id*. at 7.

The Court is not persuaded by these assertions.  First, these arguments are illogical when considering MM's previous concerns over confidentiality.  If MM contested the non-disclosure of the confidential commercial information in hopes of preventing the Jones Family Trusts from gaining leverage at the lease renegotiation, it would only make sense if BOK as the current trustee did not already have access to the information.  Otherwise, the information would not be confidential to MM.  Second, while there may be a state court proceedings implicating BOK, such an action does not control this Court's decision or the discovery available to the parties in this litigation.  Finally, the Court is not privy to the information that MM has shared with BOK or whether the release of that information would fully satisfy Defendants' current requests.  It would be irresponsible to thrust the burden of turning over the requested information upon BOK without knowing whether it even has access to it.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Martin Marietta's Motion to Quash is GRANTED IN PART AND DENIED IN PART.  Martin Marietta is ORDERED to comply with Requests One, Two, Three, and Four of the subpoena.  These disclosures are subject to the Court's earlier protective order of June 22, 2007.