# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:02-CV-00324-R

LORI ANDERSON, *et al.*                                                                                                                                 PLAINTIFFS

v.

OLD NATIONAL BANCORP &
OLD NATIONAL TRUST COMPANY                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Old National Bankcorp and Old National Trust Company's (collectively "ONB" or "Defendants") motion to compel nonparty Bank of Oklahoma ("BOK") to comply with a subpoena *duces tecum* (DN 217). BOK has responded (DN 218), ONB has replied (DN 223), and BOK as submitted a surreply (DN 226). Plaintiffs in this matter have also submitted a response (DN 219). This motion is now ripe for adjudication. For the reasons that follow, this motion is GRANTED.

## BACKGROUND

This matter originally arose out of a dispute concerning a breach of a lease ("Lease"). Plaintiffs in this case are beneficiaries of the Charles R. Jones, Sr. Trust ("C.R. Trust") and the Eula Kathleen Jones Trust ("Eula Trust") (collectively "Jones Family Trusts"). The subject of the Lease is the Jones Family Trusts' primary asset, the Three Rivers Quarry ("Quarry"). The original dispute involved the lessee quarry operator, Martin Marietta Materials, Inc. ("MM"), and the Jones Family Trusts. In November 1997, MM removed and marketed approximately 2,000 cubic yards of soil from the property. This action became the basis of a lawsuit brought by the trustees of the Jones Family Trusts. The trustees argued the removal and marketing of the

soil constituted a breach of the Lease.  The beneficiaries hoped that if the Lease terminated, they would be able to negotiate a new lease with more favorable terms.

In this prior lawsuit, the Court found that MM breached the Lease by marketing the surface soil.  *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, No. 5:95-cv-289 (W.D. Ky. Feb. 8, 2000).  However, the Court held the trustees had waived their right to terminate the Lease because they accepted Lease payments after and with knowledge of Martin Marietta's breach.  *Id.*  The Sixth Circuit affirmed the Court's decision.  *First Nat'l Bank & Trust Co. v. Martin Marietta Materials, Inc.*, 22 F. App'x 546 (6th Cir. 2001).  Plaintiffs then brought action against ONB, who where the trustees of the C.R. Trust and managed the Eula Trust during the removal of the soil.  In the instant lawsuit, among other claims, Plaintiffs allege that ONB breached its fiduciary duties to Plaintiffs by accepting Lease payments that resulted in a waiver of MM's breach of the Lease.

Nonparty BOK is the current trustee of the Jones Family Trusts, succeeding ONB to that post in 2005.  BOK has been drawn into its own litigation surrounding MM's operation of the Quarry, currently pending in the circuit court of McCracken County, Kentucky.  The matter again pits the Jones Family Trust's beneficiaries against its trustee, BOK ("State Action").  In BOK's first amended complaint in the State Action, it alleges that Cotton & Allen P.S.C., an accounting firm it retained to audit the rock shipments from the Quarry, referred to certain unresolved issues surrounding 45 ton adjustments on a number of MM's barge tickets.  DN 217-3 at 8.  Citing these irregularities, a number of beneficiaries of the Jones Family Trusts have urged BOK to refuse acceptance of royalty payments from MM, while still others insist it continue accepting payments until the current issues are resolved.  *Id*. at 10, 12.  To confront this

impasse, BOK filed the State Action, seeking both declaratory relief that it did not breach its fiduciary duties and instructions from the state court as to whether it should continue accepting royalty payments from MM. According to the record before the Court, the documents in the State Action are not under seal, and thus available to ONB and the public.

Regarding the case at bar, on September 20, 2010, in the United States District Court for the Northern District of Oklahoma, ONB issued a subpoena on BOK ("September Subpoena"). Although it was served on BOK in Oklahoma, it requested that the petitioned-for documents be produced in Evansville, Indiana. Contained within were the following requests:

> Request No. 1: All documents, correspondence, photographs, video, and reports, including but not limited to electronically stored information in the possession of the [BOK] as trustee (the "Trustee") of the [Jones Family Trust] in any way related to, resulting from or referring to the Cotton & Allen, P.S.C. "Review of Procedures" concerning practices of Martin Marietta at the [Quarry] for the Jones Family Trust. . . .
>
> Request No. 5: All documents, correspondence, photographs, video, reports, mine plans, records of payment, royalty remittance advices/letters, including but not limited to those electronically transmitted, which the Trustee, or any person or entity acting at the request of the Trustee, transmitted to Kenvirons, Inc., William F. Rapier & Associates, and/or Mid-America Energy & Mining Services, Inc. at any time from January 1, 2004 to the present.
>
> Request No. 6: All documents, correspondence, photographs, video, reports, or other information related in any way to the Quarry including but not limited to information electronically transmitted, by or at the direction or request of Kenvirons, Inc., William F. Rapier & Associates, and/or Mid-America Energy & Mining Services, Inc. to the Trustee or to any beneficiary of the Jones Family Trust at any time from January 1, 2004 to the present.
>
> Request No. 7: All non-privileged documents, correspondence, pleadings, photographs, reports, or other information related in any way to the Quarry including but not limited to information electronically transmitted by the Trustee, relating to or in connection with the [State Action] filed on or about June 4, 2010.

DN 218-4 at 2-4. Following the transmission of the September Subpoena, BOK served written

objections on ONB, citing a number of procedural and substantive defects. In response, ONB issued another subpoena on October 7, 2010, from the Western District of Kentucky ("October Subpoena"). DN 218-6 at 1. While the above-stated requests remained unchanged, the subpoena commanded that the materials be produced in Paducah, Kentucky. *Id*. It is the October Subpoena and BOK's resistence to it that has given rise to the instant motion.

In its motion to compel, ONB sets out that the information covered in requests 1, 5, 6, and 7 are important to the current matter and constitute discoverable information. Even though most of these materials revolve around the State Action, ONB says that the information is vital to its damages calculations. Specifically, this motion declares whether MM breached its lease with the Jones Family Trust could substantially reduce ONB's damages "pursuant to the 'one satisfaction rule.'" DN 217-1 at 4. ONB further alleges that its efforts to review the unsealed record at the McCracken County Courthouse have been stymied by local officials and opposing counsel. DN 223 at 2-5. Since they have been unable to examine these "public" records and insist that BOK is required to disclose them, ONB asks the Court to compel production, force BOK to pay the attorneys' fees incurred by ONB in its pursuit of these documents, and hold BOK in contempt if necessary. *Id*. at 2. BOK responds that the October Subpoena is improper on a number of different bases and should therefore be quashed.

## STANDARD

Federal Rule of Procedure 45 governs nonparty discovery and the subpoena power of the litigants in compelling production of materials from those parties. Fed. R. Civ. P. 45. A proper Rule 45 subpoena may command a nonparty to both testify in a deposition and turn over documents. *Id*. at (a)(1)(A). The "scope of discovery through a subpoena is the same as that

applicable to Rule 34 and other discovery rules", Fed. R. Civ. P. 45 (advisory committee note (1970)), and therefore "subject to the general relevancy standard applicable to discovery under [Rule 26(b)(1)]" *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-CV-1011, 2010 WL 2639913, at * 1 (N.D. Ohio June 29, 2010) (quoting *Laethem Equip. Co. v. Deere and Co.*, No. 05-CV-10113, 2007 WL 2873981, at *4 (E.D. Mich. Sept. 24, 2007)).

## DISCUSSION

BOK claims requests 1, 5, 6, and 7 (collectively "Requests") are improper for a variety of reasons.[1] Initially however, the Court must address whether the October Subpoena is procedurally flawed.

Rule 45 sets out that with regards to a nonparty, a "subpoena must issue . . . for production or inspection . . . from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). "[The rule] applies to production of documents not requiring a non-party deposition." *Brinkley v. Houk*, No. 4:06-CV-0110, 2008 WL 4560777, at *1 (N.D. Ohio Oct. 8, 2008) (citing *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 412 (3rd Cir. 2004)). The rule also requires that the subpoena may be served in any of the following places:

> (A) within the district of the issuing court; (B) outside the district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection; (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the places specified for the deposition, hearing, trial, production, or inspection; or (D) that the court authorizes on motion and for good cause, if a federal statute so provides.

---

[1] BOK states the October Subpoena (1) violates the federal rules of procedure, (2) seeks irrelevant materials, (3) contains requests that are overly broad, (4) is unduly burdensome, and (5) petitions for materials covered by the attorney-client privilege.

*Id*. § 45(b)(2)(A)-(D).  "Because a court may not compel production of documents over which a non-party witness does not have control, even if that court has personal jurisdiction over the non-party witness, production of documents will be assured if the subpoena requires the production in the district court where the non-party resides or where the headquarters of the witness are located."  *Brinkley*, 2008 WL 4560777, at *1 (citations omitted).

In its reading of Rule 45, BOK says that since the subpoena was issued from the Western District of Kentucky but served in Oklahoma, it violates the rule's clear provisions, in particular sections (a)(2)(C) and (b)(2).  ONB argues this is a mischaracterization of Rule 45's language.  It also states that as most of the relevant documents reside with BOK's local counsel in Louisville, Kentucky, this objection is without merit.

The Sixth Circuit has yet to confront the limits of Rule 45(a)(2)(C) and whether a trial court may order the production of documents when they are located far from the district's boundaries in which the court is located.  *See Brinkley*, 2008 WL 4560777, at *1.  In *Brinkley v. Houk*, litigants in the Northern District of Ohio tried to enforce a subpoena issued from that district on the Ohio Public Defenders Office, located in Columbus, Ohio.  *Id*.  The subpoena sought the production of documents to be delivered in Cleveland, Ohio, which was in a different judicial district and over a hundred miles away from Columbus.  *Id*.  Relying upon the "plain language" of Rule 45 and its 100-mile limitation, the *Brinkley* court quashed the subpoena and required the litigants to issue it anew in the Southern District of Ohio.  *Id*. at *2-3.  Overall, the decision appears to be premised on the strict interpretation of Rule 45 and the desire to let the court of appeals speak for the Sixth Circuit rather than a district court.

Not only is *Brinkley* a prudent and well-reasoned decision, but it tracks the rulings of

6

other courts outside this circuit. In *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 227 F.R.D. 374 (W.D. Pa. 2005), Judge Gibson consolidated a number of decisions from around the country to interpret Rule 45 and the process whereby a nonparty may be subjected to a subpoena. Describing the breadth of the rule, Judge Gibson defined the geographic limitations where a nonparty could be forced to turn over documents: "usually no more than 100 miles from the nonparty's location." *Id*. at 380-81 (quoting *Anderson v. Gov't of V.I.*, 180 F.R.D. 284, 289-90 (D.V.I. 1998). Such a requirement comports with the overall purpose of Rule 45, weighing the need for the information with the convenience of the nonparty. *Id*. at 381 n. 10 (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484-85 (D. Md. 2002)). This logic has been directly employed or mimicked on several occasions by a variety of district courts. *See e.g.*, *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010) (as documents were located in Southern District of Alabama, and the subpoena was issued from the district, it was not defective); *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79 (D. Del. 2009) ("Typically, a subpoena for production of documents must issue from the district where the documents are located." (citations omitted)); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953, 2008 WL 1995298, at *3 (E.D. Pa. May 5, 2008) ("Rule 45(a)(2)(C) requires that a subpoena *duces tecum* issue from a court where the documents to be produced or inspected are located." (citations omitted)). As *Brinkley, Highland,* and these analogous decisions represent the present legal tide, the Court will accept their analysis in deciding this matter.

Though the Court is persuaded by *Brinkley*'s ruling, the facts in it and the instant matter are distinguishable. In that case, the parties both agreed the discoverable documents resided in

7

another district. In the instant matter, the parties dispute exactly where the petitioned-for items are located. ONB claims most of the responsive documents are either in McCracken County or in Louisville with BOK legal counsel; BOK assures the Court that most of the materials targeted by the October Subpoena are in its home offices in Oklahoma. Neither party has offered, nor has this Court encountered, instructive precedent on where to file a subpoena when there is a dispute over the location of documents.

In choosing to accept the statements contained within BOK's briefs as true and accurate statements, the Court notes the managing director of BOK's trust department has filed an affidavit affirming that "[a]ll documents relating to the Jones Trusts in the possession of [BOK] are maintained in Oklahoma." DN 218-1 at 4. Considering that BOK is in the best position to know the location of its own internal documents, the Court rejects ONB's unsupported declarations that the "majority" of the responsive materials are located in the Western District of Kentucky. What is more, even accepting ONB's allegation that some of the documents it seeks are located within the district, *all* of the documents subject to the October Subpoena are in Oklahoma. Thus, ONB will ultimately be required to issue another subpoena in Oklahoma to gather the entirety of the items it requests. This strikes the Court as a duplicative and unnecessary process considering that a single subpoena issued from the appropriate venue in Oklahoma will confront the entirety of the materials ONB seeks.

In light of the plain language of Rule 45, to avoid a piecemeal review of this matter in two separate judicial districts, and when considering ONB's unpersuasive arguments to the contrary,[2] the Court chooses to quash the October Subpoena. ONB may reissue it to BOK on

---

[2] In its reply brief, ONB cited a number of cases standing for the proposition that a Rule 45 subpoena may be served on a nonparty and petition for disclosure of documents more than

behalf of the United States District Court for the Northern District of Oklahoma. If that district court feels that ceratin aspects of this matter could be best resolved by this Court, it may remit them for resolution. *Cf. Brinkley*, 2008 WL 4560777, at *3.

Finally, both BOK and ONB move that the other pay their respective expenses in addressing this motion. *See* Fed. R. Civ. P. 45(c)(1). Considering the confusion over the exact location of the documents and the lack of guidance from the Sixth Circuit, the imposition of sanctions would be inappropriate.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants Old National Bankcorp and Old National Trust Company's Motion to Compel Production is DENIED. Defendants may proceed, consistent with this opinion's findings, in gathering the requested information.

IT IS FURTHER ORDERED that a **telephonic conference is scheduled for 10:00 a.m. CST on October 14, 2011**. The Court shall initiate the call. Before the call, the parties shall confer about an updated schedule for this matter.

---

100 miles from the place where production is requested. *See U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 19-20 (D. Me. 2010); *Walker v. Center for Food Safety*, 667 F. Supp. 2d 133, 137-38 (D.D.C. 2009); *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. 09-cv-018220, 2009 WL 3075597 *3 (D. Colo. Sept. 22, 2009). These cases, however, concern the specifics of Rule 45 under subsection (c)(2)(A) while BOK's contention that the October Subpoena is procedurally flawed it arises out of subsection (a)(2)(C). These cases are therefore inapposite to the matter at hand. In addition, the Court finds the reasoning on these decisions both unpersuasive and in contravention of the policy behind Rule 45.